1
2
3
4
5
6
7
8
9
10
11
12
13
14

**EXHIBIT A**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Kent A. Gardiner, Esq. (*pro hac vice*)
2  Kathryn D. Kirmayer, Esq. (*pro hac vice*)
   Jerome A. Murphy, Esq. (*pro hac vice*)
   CROWELL & MORING LLP
3  1001 Pennsylvania Avenue, N.W.
   Washington, D.C.  20004
4  United States of America
   Tel.:  (202)624-2500
5  Fax:  (202)628-5116

6  Daniel A. Sasse, Esq. (CA Bar No. 236234)
   Christine E. Cwiertny, Esq. (CA Bar No. 222098)
7  Crowell & Moring LLP
   3 Park Plaza, 20th Floor
8  Irvine, CA 92614
   United States of America
9  Tel: (949) 263-8400
   Fax: (949) 263-8414
10

11  Counsel for Plaintiff Sun Microsystems, Inc.

12

13            **UNITED STATES DISTRICT COURT**

14  **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

15  SUN MICROSYSTEMS, INC., a California       Case No. C 06-01665 PJH
    corporation,
16                                             **REQUEST FOR**
                          Plaintiff,           **INTERNATIONAL JUDICIAL**
17                                             **ASSISTANCE**
             v.
18
    HYNIX SEMICONDUCTOR, INC. a Korean
19  corporation, HYNIX SEMICONDUCTOR
    AMERICA INC., a California corporation,
20  MOSEL VITELIC INC., a Taiwanese corporation,
    MOSEL VITELIC CORP., a California
21  corporation, NANYA TECHNOLOGY
    CORPORATION, a Taiwanese corporation,
22  NANYA TECHNOLOGY CORPORATION,
    USA, a California corporation, WINBOND
23  ELECTRONICS CORPORATION, a Taiwanese
    corporation, WINBOND ELECTRONICS
24  CORPORATION AMERICA, a Delaware
    corporation, ELPIDA MEMORY, INC., a
25  Japanese corporation, ELPIDA MEMORY (USA)
    INC., a Delaware corporation, MITSUBISHI
26  ELECTRIC CORPORATION, a Japanese
    corporation, MITSUBISHI ELECTRIC AND
27  ELECTRONICS USA, INC., a Delaware
    corporation, and MITSUBISHI ELECTRIC
28  EUROPE B.V., a Netherlands corporation,

                          Defendants.

                                1

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1    The United States District Court, Northern District of California presents its

2    compliments to the appropriate Judicial Authority in Taiwan and requests international

3    judicial assistance to effect service of process upon a named Defendant in the above

4    captioned civil proceeding currently pending before this court.  This court requests the

5    assistance described herein as necessary in the interests of justice.  It has been

6    represented to this Court that Defendant WINBOND ELECTRONICS CORPORATION

7    is doing business at the following address:

8                    **No. 4, Creation Road 3**
                 **Science-Based Industrial Park**
9                       **Hsinchu 300**
                         **Taiwan**
10

11   The Court respectfully requests that you cause one copy of the attached documents

12   – Summons in a Civil Case with Attachment A; Complaint; Order Setting Initial Case

13   Management Conference and ADR Deadlines; Standing Order Regarding Case

14   Management in Civil Cases; Order Setting Case Management Conference; General

15   Standing Order; Dispute Resolution Procedures; Joint Case Management Statement and

16   Proposed Order; Consent to Proceed Before a United States Magistrate Judge; General

17   Order No. 40, Prohibition of Bias; General Order No. 45, Electronic Case Filing; Notice

18   of Electronic Availability of Case File Information; General Order No. 53, Privacy;

19   Instructions for Completion of ADR Forms Regarding Selection of an ADR Process

20   (ADR Local Rule 3-5); ADR Certification by Parties and Counsel; Stipulation and

21   (Proposed) Order Selecting ADR Process; Notice of Need for ADR Phone Conference;

22   Information from the Clerk of the Court; ECF Registration Information Handout;

23   Plaintiff Sun Microsystems, Inc's Administrative Motion to Consider Whether Cases

24   Should Be Related (Declaration of Christine E. Cwiertny Concurrently Filed Herewith);

25   (Proposed) Order Relating Sun Microsystems, Inc. v. Hynix Semiconductor, Inc., Et Al.,

26   Case No. C 06-01665 and In Re Dynamic Random Access Memory (Dram) Antitrust

27   Litigation, Master File No. M-02-1486-PJH, MDL No. 1486; Declaration of Christine E.

28   Cwiertny Explaining Why Stipulation Not Obtained in Support of Plaintiff Sun

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   Microsystems, Inc's Administrative Motion to Consider Whether Cases Should be

2   Related (Plaintiff Sun Microsystems, Inc.'s Administrative Motion to Consider Whether

3   Cases Should be Related Filed Concurrently Herewith); Certificate of Service; Certificate

4   of Service; Plaintiff Sun Microsystems, Inc.'s Notice of Pendency of Other Action or

5   Proceeding; Certificate of Service to be served upon WINBOND ELECTRONICS

6   CORPORATION at the above described address in the manner prescribed for a service of

7   similar documents under the laws of Taiwan.  This Court further requests that, after

8   service has been made, you cause the person who serves the documents upon WINBOND

9   ELECTRONICS CORPORATION to execute a Certificate of Service and return it,

10  together with a copy of the documents served, to this court at the address below.

11          The Plaintiff's Attorneys stand ready to reimburse your authority for all expenses

12  incurred in executing this request for international judicial assistance.  This court also

13  assures your authority that it will reciprocate with similar assistance in like cases.

14          The court extends to the judicial authorities in Taiwan the assurances of its highest

15  consideration.

16

17  Dated: _____6/16/06_____

18

19

20

21

22  2774934

23

24

25

26

27

28

*IT IS SO ORDERED*

*Judge Phyllis J. Hamilton*

REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

# United States District Court
## NORTHERN DISTRICT OF CALIFORNIA

Sun Microsystems, Inc.,

**SUMMONS IN A CIVIL CASE**

Plaintiff

CASE NUMBER: C06-01665 JW (HRL)

v.

Hynix Semiconductor, Inc., Hynix Semiconductor, America, Inc., Mosel Vitelic Inc., Mosel Vitelic Corp., Nanya Technology Corporation, Nanya Technology Corporation, USA, Winbond Electronics Corporation, Winbond Electronics Corporation America, Elpida Memory, Inc., Elpida Memory (USA) Inc., Mitsubishi Electric Corporation, Mitsubishi Electric And Electronics USA, Inc., and Mitsubishi Electric Europe B.V.

Defendants

TO: (Name and address of defendant)

Hynix Semiconductor, Inc., Hynix Semiconductor America Inc., Mosel Vitelic Inc., Mosel Vitelic Corp., Nanya Technology Corporation, Nanya Technology Corporation, USA, Winbond Electronics Corporation, Winbond Electronics Corporation America, Elpida Memory, Inc., Elpida Memory (USA) Inc., Mitsubishi Electric Corporation, Mitsubishi Electric And Electronics USA, Inc., and Mitsubishi Electric Europe B.V.:
(See Attachment A for addresses)

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Kent A. Gardiner, Esq. (pro hac vice)
Kathryn D. Kirmayer, Esq. (pro hac vice)
R. Scott Feldmann, Esq. (CA Bar No. 169230)
Christine E. Cwiertny, Esq. (CA Bar No. 222098)
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Tel: (949) 263-8400
Fax: (949) 263-8414

an answer to the complaint which is herewith served upon you, within  20    days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking

CLERK

Betty J. Walton

(BY) DEPUTY CLERK

DATE  March 7, 2006

ORIGINAL

ATTACHMENT A

HYNIX SEMICONDUCTOR, INC.
San 136-1, Ami-Ri, Bubal-eub
Ichon-si, Kyongki-do, 467 860 Korea (South)

HYNIX SEMICONDUCTOR AMERICA INC.
3101 North First Street
San Jose, CA 95134

MOSEL VITELIC INC.
No. 19 Li-Hsin Road
Science Based Industrial Park
Hsinchu, Taiwan, R.O.C.

MOSEL VITELIC CORPORATION
3910 North First Street
San Jose, CA 95134

NANYA TECHNOLOGY CORPORATION
HWA YA Technology Park
669 Fu Hsing 3rd Rd.
Keuishan, Taoyuan, Taiwan, R.O.C.

NANYA TECHNOLOGY CORPORATION, USA
675 E. Brokaw Road
San Jose, CA 95112

WINBOND ELECTRONICS CORPORATION
No. 4, Creation Road 3 and No. 9, Li-Shin Road
Science-Based Industrial Park
Hsinchu, 300 Taiwan, R.O.C.

WINBOND ELECTRONICS CORPORATION AMERICA
2727 North First Street
San Jose, CA 95134

ELPIDA MEMORY, INC.
Sumitomo Seimei Yaesu Building, 3F
2-1 Yaesu 2-chome, Chuo-ku
Tokyo, Japan.

ELPIDA MEMORY (USA) INC.
2001 Walsh Avenue
Santa Clara, CA 95050

MITSUBISHI ELECTRIC CORPORATION
Tokyo Building, 2-7-3, Marunouchi
Chiyoda-ku
Tokyo 100-8310, Japan

MITSUBISHI ELECTRIC & ELECTRONICS USA, INC.
5665 Plaza Drive
Cypress, CA 90630

ATTACHMENT A (cont'd)


MITSUBISHI ELECTRIC EUROPE B.V.
The Atrium, Uxbridge One
1 Harefield Road
Uxbridge, Middlesex
UB8 1PH, England

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and Complaint was made by me [1] | DATE |
| Name of SERVER | TITLE |

| Check one box below to indicate appropriate method of service |
|---|

☐　Served Personally upon the Defendant. Place where served:

☐　Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
　　Name of person with whom the summons and complaint were left:

☐　Returned unexecuted:

☐　Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

| DECLARATION OF SERVER |
|---|

　　　　I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____　　　_____
　　　　　　　　　　Date　　　　　　　　　　　　　　　Signature of Server

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　Address of Server

(1)　As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

1  Kent A. Gardiner *(pro hac vice)*
   Kathryn D. Kirmayer *(pro hac vice)*
2  CROWELL & MORING LLP
   1001 Pennsylvania Avenue, N.W.
3  Washington, D.C. 20004
   Telephone: 202-624-2500
4  Facsimile: 202-628-5116
   E-mail: kgardiner@crowell.com
5          kkirmayer@crowell.com

6  R. Scott Feldmann (CA Bar No. 169230)
   Christine E. Cwiertny (CA Bar No. 222098)
7  CROWELL & MORING LLP
   3 Park Plaza, 20th Floor
8  Irvine, California 92614
   Telephone: 949-263-8400
9  Facsimile: 949-263-8414
   E-mail: ccwiertny@crowell.com

10
11 Counsel for Plaintiff
   Sun Microsystems, Inc.

MAR 0 2 2006

E-Filing

C06 - 01665   JW
                    HRL

12         UNITED STATES DISTRICT COURT

13  NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

14  SUN MICROSYSTEMS, INC., a California          Case No. _____
    corporation,
15                         Plaintiff,            **COMPLAINT FOR DAMAGES AND
                                                  INJUNCTIVE RELIEF**
16         v.
                                                 **(1)     VIOLATION OF THE
17  HYNIX SEMICONDUCTOR, INC. a Korean           SHERMAN ACT PURSUANT TO
    corporation, HYNIX SEMICONDUCTOR,            15 U.S.C. § 1**
18  AMERICA, INC., a California corporation,
    MOSEL VITELIC INC., a Taiwanese              **(2)     VIOLATION OF
19  corporation, MOSEL VITELIC CORP., a          CALIFORNIA'S CARTWRIGHT
    California corporation, NANYA                ACT PURSUANT TO §§ 16700
20  TECHNOLOGY CORPORATION, a                    ET SEQ. OF CAL. BUS. & PROF.
    Taiwanese corporation, NANYA                 CODE**
21  TECHNOLOGY CORPORATION, USA, a
    California corporation, WINBOND              **(3)     VIOLATION OF
22  ELECTRONICS CORPORATION, a                   CALIFORNIA'S UNFAIR
    Taiwanese corporation, WINBOND               COMPETITION ACT PURSUANT
23  ELECTRONICS CORPORATION                      TO §§ 17200 ET SEQ. OF CAL. BUS.
    AMERICA, a Delaware corporation, ELPIDA      & PROF. CODE**
24  MEMORY, INC., a Japanese corporation,
    ELPIDA MEMORY (USA) INC., a                  **DEMAND FOR JURY TRIAL**
25  Delaware corporation, MITSUBISHI
    ELECTRIC CORPORATION, a Japanese
26  corporation, MITSUBISHI ELECTRIC AND
    ELECTRONICS USA, INC., a Delaware
27  corporation, and MITSUBISHI ELECTRIC
    EUROPE B.V., a Netherlands corporation,
28
                         Defendants.

COMPLAINT OF SUN MICROSYSTEMS, INC.

1    Plaintiff Sun Microsystems, Inc., for its complaint against defendants Hynix

2   Semiconductor, Inc., Hynix Semiconductor, America, Inc., Mosel Vitelic Inc., Mosel

3   Vitelic Corp., Nanya Technology Corporation, Nanya Technology Corporation (USA),

4   Winbond Electronics Corporation, Winbond Electronics Corporation America, Elpida

5   Memory, Inc., Elpida Memory (USA), Inc., Mitsubishi Electric Corporation, Mitsubishi

6   Electric and Electronics USA, Inc., and Mitsubishi Electric Europe B.V. (collectively,

7   "Defendants"), alleges as follows:

8   A.    **Nature of Action**

9          1.     Plaintiff Sun Microsystems, Inc. ("Sun") brings this action to recover

10   damages it has incurred as a result of long-standing collusion by suppliers of dynamic

11   random access memory ("DRAM") computer chips.  As described in more detail below,

12   in June 2002 the United States Department of Justice announced that it had uncovered a

13   long-standing conspiracy among the world's DRAM suppliers.  During the conspiracy,

14   DRAM suppliers conspired to control production capacity, raise prices or slow their

15   decline, allocate customers, and otherwise unlawfully overcharge their DRAM

16   customers.  During that same period of time, Sun purchased several billion dollars of

17   DRAM chips from the co-conspirators.

18          2.     As a result of the Department of Justice's investigation, five of the world's

19   largest suppliers of DRAM chips have now admitted to their involvement in the

20   conspiracy: defendants Hynix Semiconductor, Inc. and Elpida Memory, Inc. and

21   conspirators Micron Technology, Inc., Samsung Electronics Co., Ltd., and Infineon

22   Technologies AG.  Micron Technology, Inc. obtained amnesty from criminal prosecution

23   by being the first to admit its participation in the illegal cartel; Infineon Technologies

24   AG, Hynix Semiconductor, Inc., and Elpida Memory, Inc. have agreed to enter guilty

25   pleas and pay fines based on their involvement in the illegal activities.  In doing so,

26   Elpida Memory, Inc. admitted it conspired with an unnamed DRAM manufacturer to rig

27   a bid for a DRAM lot sold to Sun.  Furthermore, senior officials of Micron Technology,

28   Inc., Hynix Semiconductor, Inc., and Infineon Technologies AG  have pleaded guilty to

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   colluding with their competitors to fix and raise DRAM prices.  The Department of

2   Justice investigation is continuing, and additional guilty pleas from other conspirators are

3   expected.

4         3.     Sun seeks treble damages and injunctive relief to remedy injuries it

5   sustained as a result of the defendants' illegal activities.

6   **B.**     **Jurisdiction and Venue**

7         4.     Sun brings this action pursuant to Sections 4, 12, and 16 of the Clayton Act

8   (15 U.S.C. § §  15, 22 and 26) (2000 suppl. 2) for treble damages and injunctive relief, as

9   well as reasonable attorneys' fees and costs, with respect to the injuries it sustained

10   arising from violations by the defendants of Section 1 of the Sherman Act, 15 U.S.C. §  1

11   (2000 suppl. 2).

12         5.     Sun also brings this action pursuant to Section 16750(a) of the California

13   Business and Professions Code, for injunctive relief and treble damages that Sun

14   sustained due to violations by the Defendants and their co-conspirators of Section 16700

15   *et seq.* of the California Business and Professions Code (the "Cartwright Act").  Sun's

16   claims also are brought pursuant to Sections 17203 and 17204 of the California Business

17   and Professions Code, to obtain restitution from and an injunction against the defendants

18   due to their violations of Section 17200 *et seq.* of the California Business and Professions

19   Code (the "Unfair Competition Act").

20         6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § § 1331

21   and 1337(a).  This Court has supplemental jurisdiction over Sun's state law claims

22   pursuant to 28 U.S.C. § 1367(a).

23         7.     This Court has jurisdiction over this action pursuant to the Foreign Trade

24   Antitrust Improvements Act, 15 U.S.C. § 6a (2000 suppl. 2), in that Sun's injuries were

25   proximately caused by increased prices for DRAM in the United States.

26         8.     Venue is proper in this judicial district pursuant to 15 U.S.C. § §  15 and

27   22, and 28 U.S.C. 1391(b), (c), and (d), in that at least one of the Defendants resides in

28   this judicial district or is licensed to do business or is doing business in this judicial

crowell (moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   district.  Venue as to each defendant also is proper in this judicial district pursuant to the

2   provisions of Sections 16750(a) and 17203 of the Business and Professions Code.  The

3   unlawful conduct undertaken pursuant to the combination and conspiracy alleged herein

4   had and has a direct effect on business within the State of California, and the trade and

5   commerce described below is carried on to a significant degree within the State of

6   California.

7          9.     This Court has *in personam* jurisdiction over each of the Defendants

8   because, *inter alia,* each Defendant (a) transacted business throughout the United States

9   including this district; (b) manufactured, sold, shipped, and delivered substantial

10   quantities of DRAM throughout the United States including this district; (c) had

11   substantial contacts with the United States; and (d) was engaged in an illegal scheme and

12   price-fixing conspiracy that was directed at and had the intended effect of causing injury

13   to persons and entities residing in, located in, or doing business throughout the United

14   States.

15   **C.   Intradistrict Assignment**

16         10.    Because Plaintiff and a large number of the Defendants maintain their

17   principal places of business within Santa Clara County, this action arises in Santa Clara

18   County for the purposes of Civil L.R. 3-2(c), and should be assigned to the San Jose

19   Division.

20   **D.   Parties**

21         11.    Sun is a California corporation with its principal place of business in Santa

22   Clara, California.  Sun is a leading maker of computer servers, workstations, and storage

23   systems, with net sales in 2004 of $11.1 billion.  During the relevant timeframe, Sun was

24   a direct purchaser of DRAM from the defendants.  As a direct purchaser, Sun frequently

25   negotiated with defendants the price of DRAM and memory modules primarily

26   comprised of DRAM.  Sun purchased much of its DRAM through the use of private

27   auctions, whose participants were both U.S. and foreign suppliers.  These auctions set the

28   worldwide price for DRAM paid by Sun to the winning bidders.  Defendants' price-

crowell&moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

3

COMPLAINT OF SUN MICROSYSTEMS, INC.

1    fixing was the proximate cause of artificially-elevated bid prices, and prices actually paid

2    by Sun for DRAM delivered both throughout the United States and the world.  During the

3    relevant timeframe, Sun also negotiated DRAM prices with Defendants on behalf of

4    Sun's external manufacturers, who assembled DRAM into memory modules for delivery

5    to Sun.  To the extent Sun was an indirect purchaser of DRAM, the price of that DRAM

6    was artificially inflated, causing Sun to pay a higher price.

7         12.    Defendant Hynix Semiconductor, Inc., a Korean corporation, maintains its

8    head offices at SAN 136-1, Ami-Ri, Bubal-eub, Ichon-si, Kyongki-do, Korea.  During the

9    time covered in this complaint, Hynix Semiconductor, Inc., a manufacturer of DRAM,

10   sold and distributed DRAM throughout the world, including the United States.

11        13.    Defendant Hynix Semiconductor America, Inc. is a California corporation

12   located at 3101 North First Street, San Jose, California 95134.  Hynix Semiconductor

13   America, Inc., on information and belief, is a wholly-owned and controlled subsidiary of

14   defendant Hynix Semiconductor, Inc. (collectively referred to as "Hynix").  During the

15   time period covered in this complaint, Hynix Semiconductor America, Inc. sold and

16   distributed DRAM throughout the United States.

17        14.    Defendant Mosel Vitelic Inc. is a Taiwanese corporation which maintains

18   its headquarters at No. 19 Li-Hsin Road, Science Based Industrial Park, Hsinchu,

19   Taiwan, R.O.C.  During the time period covered in this complaint, Mosel Vitelic Inc., a

20   manufacturer of DRAM, sold and distributed DRAM throughout the United States and

21   the world.

22        15.    Defendant Mosel Vitelic Corp. is a California corporation located at 3910

23   North First Street, San Jose, California 95314.  Mosel Vitelic Corp., on information and

24   belief, is a wholly-owned and controlled subsidiary of defendant Mosel Vitelic Inc.

25   (collectively referred to as "Mosel Vitelic").  During the time period covered in this

26   complaint, Mosel Vitelic Corp. sold and distributed DRAM throughout the United States.

27        16.    Defendant Nanya Technology Corporation is a Taiwanese corporation

28   which maintains its headquarters at HWA YA Technology Park, 669 Fu Hsing 3rd Rd.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

4

COMPLAINT OF SUN MICROSYSTEMS, INC.

1   Keuishan, Taoyuan, Taiwan, R.O.C.  During the time period covered in this complaint,

2   Nanya Technology Corporation, a manufacturer of DRAM, sold and distributed DRAM

3   throughout the United States and the world.

4          17.    Defendant Nanya Technology Corporation, USA, a California corporation,

5   is located at 675 E. Brokaw Road, San Jose, California 95112.  On information and

6   belief, Nanya Technology Corporation USA is a wholly-owned and controlled subsidiary

7   of defendant Nanya Technology Corporation (collectively referred to as "Nanya").  In

8   addition to its main U.S. office in San Jose, Nanya Technology Corporation operates

9   sales and technical support offices in San Jose, California, Raleigh, North Carolina, and

10  Austin, Texas and operates a memory design center in Houston, Texas.  During the time

11  period covered in this complaint, Nanya Technology Corporation USA sold and

12  distributed DRAM throughout the United States.

13         18.    Defendant Winbond Electronics Corporation is headquartered at No. 4,

14  Creation Road 3 and No. 9, Li-Shin Road, Science-Based Industrial Park, Hsinchu,

15  Taiwan, R.O.C.  During the time period covered in this complaint, Winbond Electronics

16  Corporation, a manufacturer of DRAM, sold and distributed DRAM throughout the

17  United States and the world.

18         19.    Defendant Winbond Electronics Corporation America, a Delaware

19  corporation, is located at 2727 North First Street, San Jose, California 95134 and is a

20  wholly-owned subsidiary of Winbond Electronics Corporation (collectively referred to as

21  "Winbond").  During the time period covered in this complaint, Winbond Electronics

22  Corporation America sold and distributed DRAM throughout the United States.

23         20.    Defendant Elpida Memory, Inc., a Japanese corporation, maintains its

24  executive offices at Sumitomo Seimei Yaesu Building, 3F, 2-1 Yaesu 2-chome, Chuo-ku,

25  Tokyo, Japan.  During the time period covered in this complaint, Elpida Memory Inc., a

26  manufacturer of DRAM, sold and distributed DRAM throughout the United States and

27  the world.

28

5

COMPLAINT OF SUN MICROSYSTEMS, INC.

21.     Defendant Elpida Memory (USA), Inc., a Delaware corporation, is located at 2001 Walsh Ave, Santa Clara, California, 95050 and is a wholly-owned subsidiary of Elpida Memory, Inc. (collectively referred to as "Elpida").  During the time period covered in this complaint, Elpida Memory (USA), Inc. sold and distributed DRAM throughout the United States.

22.     Defendant Mitsubishi Electric Corporation, a Japanese corporation, is headquartered at Tokyo Building, 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan.  During the time period covered in this complaint, Mitsubishi Electric Corporation, a manufacturer of DRAM,  sold and distributed DRAM throughout the United States and the world.

23.     Defendant Mitsubishi Electric & Electronics USA, Inc., a Delaware corporation, is headquartered at 5665 Plaza Drive, Cypress, CA 90630-0003 and is a wholly-owned subsidiary of Mitsubishi Electric Corporation.  During the time period covered in this complaint, Mitsubishi Electric & Electronics USA, Inc. sold and distributed DRAM throughout the United States.

24.     Defendant Mitsubishi Electric Europe B.V., a Netherlands corporation and a wholly-owned subsidiary of Mitsubishi Electric Corporation (collectively referred to as "Mitsubishi"), is headquartered at The Atrium, Uxbridge One, 1 Harefield Road, Uxbridge, Middlesex, UB8 1PH, England, with its United Kingdom branch at Travellers Lane, Hatfield, Hertfordshire, AL 10 8XB.  During the time period covered in this complaint, Mitsubishi Electric Europe B.V. sold and distributed DRAM throughout the United States and the European Union.

25.     Conspirators Infineon Technologies AG, Infineon Technologies North America Corp. (collectively known as "Infineon"), Micron Technology Inc., Micron Semiconductor Products, Inc., (collectively known as "Micron"), Samsung Electronics Co., Ltd., and Samsung Semiconductor, Inc. (collectively known as "Samsung,") also have participated in the violations alleged herein and have performed acts and made statements in furtherance thereof.

COMPLAINT OF SUN MICROSYSTEMS, INC.

crowell▮moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

26.     Various other individuals, partnerships, corporations, and other business entities, currently unknown to Sun, have participated in the violations alleged herein and have performed acts and made statements in furtherance thereof.

27.     The acts charged in this complaint have been done by Defendants or were ordered or done by Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' affairs.

**E.     Trade and Commerce**

28.     During the relevant period, Defendants sold and shipped substantial quantities of DRAM in a continuous and uninterrupted flow of interstate and international commerce to customers located in states other than the states in which Defendants are located.

29.     The business activities of Defendants that are the subject of this Complaint were within the flow of, and substantially affected, interstate trade and commerce.

30.     During the relevant period, Defendants and their co-conspirators made most of the DRAM sales in the global market.

**F.     Statement of Facts**

31.     Defendants and their co-conspirators manufacture, sell, and distribute memory chips throughout the world. Memory chips store data in a wide variety of computing and electronic devices. Memory chips are used in the manufacture of, and are critical to the functioning of, such devices as personal computers, workstations, servers, printers, fax machines, digital cameras and video recorders, video game equipment, personal digital assistants, and cellular and wireless telephones.

32.     DRAM is the dominant, most common form of memory chip. "Random Access Memory" means that the data, stored in the form of 0s and 1s, can be accessed directly from any part of the memory, rather than having to proceed sequentially from some starting place. DRAM is called "dynamic" because it must have its storage cells refreshed or given a new electronic charge every few milliseconds.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

33.    A DRAM chip is a large-scale integrated circuit with simple structures, and is fairly easy to manufacture.  Accordingly, DRAM is a commodity, with each of Defendants' products being freely interchangeable with the products of another company.

34.    DRAM is sold in individual chips, or in modules with several chips attached to each module.

35.    DRAM sales exceed $20 billion a year.  The world's top four makers of DRAM, all of whom are Defendants herein or their co-conspirators, control roughly 70% of the market; the top six manufacturers control 96% of the market.

36.    The DRAM industry enjoyed an extended period of prosperity in the mid-1990s as the PC computer industry boomed.  During this time DRAM manufacturers could not meet the demand for their products.  Revenues from DRAM sales nearly tripled between 1993 and 1995.  DRAM manufacturers responded by building substantial new chip-making capacity.  Factories for the manufacture of DRAM chips are referred to as fabrication plants, or "fabs."

37.    In 1996, this new capacity, coupled with demand decline, led to pressure on Defendants to cut their prices.  Defendants responded by illegally conspiring to limit capacity and artificially fix and raise prices.

38.    Specifically, in December 1996, DRAM manufacturers attended a SyncLink Consortium.  SyncLink was a DRAM industry organization whose members consisted of DRAM suppliers.  During this December 1996 meeting, DRAM suppliers resolved to establish unified strategies to address market concerns.  Although the organization initially appears to have been created to address technology concerns, the industry reorganized the consortium in January 1999, causing the new president of the organization to acknowledge publicly that the focus of the group would be to "co-ordinate instead of develop new technology."

39.    Executives from DRAM suppliers met again in Japan in January 1997. During this meeting the participants agreed that they would need to continue communicating with each other.  The participants also agreed to use an e-mail

1    distribution software program then known as a reflector e-mail, which permitted industry

2    executives to exchange information via e-mail quickly and confidentially.

3        40.    Shortly after this meeting, in February 1997, DRAM suppliers curtailed

4    production at their DRAM manufacturing facilities (known as "fabs"), as part of a

5    collusive effort to maintain and raise prices.

6        41.    This coordinated drop in production had an immediate, but temporary,

7    effect on prices, which rose during the second quarter of 1997. Prices then began to fall

8    again in the second half of 1997.

9        42.    As DRAM prices continued to fall into early 1998, DRAM manufacturers

10   held at least two meetings to discuss the problem in April and June. The second meeting,

11   held on June 25, was called an "Executive Summit" and was attended by industry

12   executives. One of the topics at the Summit was how to "Manage Price Competition,

13   Profitability." Upon information and belief, during these meetings, and in

14   communications before and after these meetings, Defendants discussed supply and

15   pricing issues, and agreed that they would limit their capacity to artificially decrease the

16   supply of, and increase, maintain, or control the price of, DRAM chips.

17       43.    Between June and September of 1998 every major DRAM manufacturer

18   announced that it was curtailing or shutting down DRAM production facilities because of

19   a lack of demand for the product. Defendant Hynix's corporate predecessor, Hyundai,[1]

20   and Samsung each shut down their facilities for approximately one to two weeks in the

21   summer of 1998. Other suppliers communicated their intentions to slash production.

22       44.    This coordinated withdrawal of production capacity had an immediate

23   effect on prices, which began to rise in June 1998, and increased steadily throughout the

24   rest of the year.

25

26

27   [1]    The Hyundai Group's semiconductor subsidiary was named Hyundai Electronics.
     In April 2001 Hyundai renamed this subsidiary Hynix Semiconductor. In August 2001
28   Hyundai spun off the company.

COMPLAINT OF SUN MICROSYSTEMS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

45. In August 1998, an email circulated among DRAM suppliers, which warned that during the ramp-up in production of a new DRAM standard being implemented by Rambus, DRAM vendors "will need a constant flow of information to help make wise decisions and to walk the fine line between a pleasant shortage and a disastrous over-supply." A Hyundai executive noted that a shortage would please DRAM manufacturers because "prices go up."

46. A former Samsung employee, Devin Cole, has admitted that before he left Samsung in July 1998, he spoke with competitors regarding price issues. Cole informed federal authorities that these conversations led to agreements on a "range pact" that included "the ranges of prices, where each competitor felt that others would price in the range, and whether each competitor would move prices 'a little' or 'a lot'". Upon information and belief, this evidence is corroborated by Cole's own notes and other documents.

47. DRAM prices continued to climb steadily in 1999. During this time, Defendants continued their illegal communications with each other about prices, market share, and supply. In July 1999, a Hyundai executive sent an e-mail to Farhad Tabrizi, the vice president of marketing for Hyundai and head of the DRAM industry group SLDRAM Inc. (the successor organization to SyncLink). The e-mail states that "[w]ith Samsung building significant amounts of product, we need to work with them to limit the supply in the market, otherwise we both will be competing for market share which will result in an oversupply. We have to meet with Samsung and discuss our and their production plan, TAM analysis and targeted market share." In response, another Hyundai employee stated that he had "a connection in samsung" [sic] and offered to set up a meeting.

48. A short time later, Samsung and Hyundai both began raising prices at an accelerated rate. Indeed, in September 1999, industry sources noted that South Korea's DRAM suppliers -- Samsung and Hyundai -- were raising prices in one-to-two week intervals.

10

COMPLAINT OF SUN MICROSYSTEMS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

49.     Despite their unlawful and secret cooperation to reduce DRAM production and increase price, Defendants publicly misrepresented that DRAM prices escalated due to increased demand resulting from strong sales of low-priced PCs incorporating large quantities of DRAM.  In a September 13, 1999, Electronic News article, Avo Kanadjian, vice president of marketing of defendant Samsung Semiconductor, Inc. said: "Because we see the value PC and free PCs entering the market at extraordinary numbers, DRAM oversupply has silently gone into a shortage."  Chee-Wai Ho, director of product marketing for memory products at Infineon Technologies AG, agreed.

50.     Because of Defendants' collusive activities, DRAM prices remained artificially inflated from the middle of 1998 through the fall of 2000.

51.     In August 2000 prices began to drop once again.  By mid-2001, every major DRAM manufacturer was reporting losses.  Their stock prices fell.  Once again the Defendants responded by conspiring with each other to control production and raise prices.  Their collusive activities included, but were not limited to, the following:

- In July 2001, Hynix Semiconductor, Inc. announced plans to cut production to boost prices:  A spokeswoman for Hynix stated: "We understand other companies are also considering cuts."

- In August 2001, a Mosel-Vitelic executive admitted that Taiwan DRAM manufacturers had discussed curtailing production in an effort to raise prices;

- Also in August, Thomas Chang at Mosel Vitelic acknowledged talking to other Taiwan DRAM manufacturers about reducing supply.  "Our preliminary agreement is to trim some production starting September."

- In November, Micron manager Kathy Radford acknowledged efforts of Infineon and Samsung to raise prices of DRAM, and stated that Micron intended to raise prices for all of its OEM customers: "The consensus from all suppliers is that if Micron makes the move, all of them will do the same and make it stick."

11

COMPLAINT OF SUN MICROSYSTEMS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

- In late 2001 and early 2002, representatives of Samsung and Infineon communicated with one another specifically about bidding on DRAM to be purchased by Sun. During one contact, the Samsung employee told the Infineon contact that Samsung's goal in the bidding was to "come [in] second."

- Alfred Censullo, a former Micron sales manager, also confirmed that Micron spoke with competitors about pricing. Censullo pleaded guilty in January 2004 to federal charges of obstruction of justice, for altering and withholding documents responsive to a grand jury subpoena issued to Micron. At his sentencing hearing, Censullo acknowledged that these documents consisted of notes that he took during weekly conference calls with other regional sales managers at Micron, who like Censullo were responsible for major OEM customers. During these calls the managers would discuss price recommendations for major OEM customers and the prices at which competitors would sell their products to these OEM customers. Censullo's notes reflected this pricing information and identified communications between Micron and its competitors about sales and pricing.

52.   These collusive activities perpetrated by Defendants worked: by the end of 2001, the 128 MB DRAM price had increased by 95% over the November 6, 2001, spot price.

53.   Nevertheless, Defendants again publicly, and falsely, attributed the increase in DRAM price to legitimate market forces. In a December 4, 2001, interview published on Simmtester.com, Steve Appleton, chief executive officer of Micron, was asked why prices had recently increased sharply and suddenly. He answered:

"I have no idea. There clearly was a belated increase in demand as the seasonal rebound we had expected two-and-a-half months earlier finally kicked in. And, clearly the Japanese are cutting back their DRAM production. Even Hynix, which

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   is so unpredictable, cut some production by temporarily closing its Eugene, Ore.,

2   fab.  When it was running at 40K wafer capacity a month, that fab alone probably

3   had about 2.5% of the world's DRAM production."

4        54.    DRAM price increases, as well as Defendants' conspiracy, continued into

5   2002. From November 2001 to April 2002, DRAM prices tripled.  And in May 2002,

6   Thomas Chang of Mosel Vitelic stated: "We're trying to encourage a price of US $3.

7   That's the consensus . . . You don't need to have a meeting.  You just need to have a

8   phone call.  Everybody knows each other.  We just said 'try not to sell below US $3." On

9   the other hand, in a press release issued on April 15, 2002, Hynix represented that its

10  increased revenues resulted from increased demand in the DRAM market.

11       55.    On June 18, 2002, Micron announced it had been cooperating with a

12  Department of Justice investigation of the DRAM industry.

13       56.    By June 20, 2002, defendant Hynix, and conspirators Infineon and

14  Samsung, confirmed that they had received subpoenas from a grand jury investigating

15  DRAM collusion.

16       57.    On September 12, 2003, defendant Elpida announced that it had received

17  subpoenas from the DRAM grand jury.

18       58.    On or about September 4, 2004, Infineon Technologies AG entered into a

19  plea agreement with the government, pursuant to which it agreed to plead guilty to

20  conspiring to fix prices in the DRAM market between July 1999 and June 2002.

21       59.    On April 21, 2005, the Department of Justice announced that it had entered

22  into a plea agreement with defendant Hynix Semiconductor, Inc. pursuant to which

23  Hynix agreed to plead guilty to conspiring to fix prices in the DRAM market between

24  April 1999 and June 2002.

25       60.    On or about October 13, 2005, the Department of Justice announced that it

26  had entered into a plea agreement with Samsung pursuant to which Samsung agreed to

27  plead guilty to conspiring to fix prices in the DRAM market between April 1999 and

28  June 2002.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

13

61. Three months later, on January 30, 2006, the Department of Justice announced that it had entered into a plea agreement with Elpida pursuant to which Elpida agreed to plead guilty to conspiring to fix prices in the DRAM market between April 1999 and June 2002. In addition, Elpida admitted that it conspired with an unnamed DRAM manufacturer to rig a bid for a DRAM lot sold to Sun.

## G.     Violations Alleged

### FIRST CAUSE OF ACTION

### (Violation of Sherman Act Against All Defendants)

62. Sun incorporates by reference, as if fully set forth, the allegations of paragraphs 1 through 61 of this Complaint.

63. Beginning in or about January 1997, the exact date being unknown to Sun, and continuing thereafter at least through 2002 Defendants, by and through their officers, directors, employees, agents, or other representatives, entered in a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2).

64. Defendants, by their unlawful conspiracy, artificially raised, inflated, and maintained the market price of DRAM as herein alleged.

65. The contract, combination, or conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and/or allocate the market for, DRAM they sold in the United States.

66. Upon information and belief, for the purposes of formulating and effectuating their contract, combination, or conspiracy, Defendants and their co-conspirators did those things they contracted, combined or conspired to do, including:

67. participating in meetings and conversations to discuss the prices of and/or allocate the market for DRAM;

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

68.    agreeing to manipulate capacity, production, and prices so as to boost sagging DRAM prices in a manner that deprived direct purchasers of free and open competition;

69.    issuing price announcements and price quotations in accordance with the agreements reached; and

70.    selling DRAM to customers in the United States at artificially inflated and non-competitive prices.

71.    The above combination and conspiracy has had the following effects, among others:

72.    price competition in the sale of DRAM by Defendants and their co-conspirators has been restrained, suppressed, and eliminated throughout the United States;

73.    prices for DRAM sold by Defendants have been raised, fixed, maintained, and stabilized at artificially high and noncompetitive levels throughout the United States; and

74.    purchasers of DRAM from Defendants have been deprived of the benefit of free and open competition in the purchase of DRAM.

75.    As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination, and/or conspiracy, Sun has been injured in its business and property in that it has paid more for DRAM than it otherwise would have paid in the absence of the Defendants' unlawful price fixing.

## SECOND CAUSE OF ACTION

**(Violation of California's Cartwright Act Under § § 16700 Et Seq. Of The California Business & Professions Code Against All Defendants)**

76.    Sun incorporates by reference, as if fully set forth, paragraphs 1 through 75 of this Complaint.

crowell⬤moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

15

77.    Beginning in or about January 1997, the exact date being unknown to Sun, and continuing thereafter at least through 2002, Defendants by and through their officers, directors, employees, agents, or other representatives violated Section 16700 *et seq.* of the California Business and Professions Code ("Section 16700" or "Cartwright Act") by entering into and engaging in a continuing unlawful trust in restraint of trade and commerce, as described above.  During this period, Defendants, and each of them, have effected this unlawful trust, and violated Section 16700, by combining, conspiring, and/or agreeing to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM at supra-competitive levels.  Section 16720 of the Cartwright Act expressly forbids the creation of such unlawful trusts.

78.    The purpose of Defendants', and their co-conspirators', unlawful combination, conspiracy, and/or agreement was to create artificially higher DRAM prices in the marketplace thereby providing Defendants, and each of them, with substantially higher revenues and profits than would otherwise have been the case in a truly competitive market.

79.    In forming, and in furtherance of, this unlawful combination, conspiracy, and/or agreement, Defendants and their co-conspirators engaged in acts, practices, and courses of conduct, which included, but are not limited to, the following:

      a.  Participating in meetings and/or discussions amongst themselves, as discussed more fully above, for the purpose of coordinating DRAM production reductions to limit supply and fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM;

      b.  Participating in meetings, discussions, and/or communications amongst themselves, as discussed more fully above, for the purpose of exchanging information about DRAM prices and setting price ranges for DRAM to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM;

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

c. Participating in meetings, discussions, and/or communications amongst themselves, as discussed more fully above, for the purpose of setting DRAM contract prices for OEM customers to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM; and

d. Using their best efforts to ensure that the prices each charged its customers for DRAM were within the price range, or at the same price, agreed to during the meetings, discussions, and/or communications held amongst themselves.

80. As a direct consequence of the Defendants' acts, practices, and course of conduct in implementing the unlawful trust, the following have occurred:

a. DRAM price competition has been restrained, suppressed, and/or eliminated, including, but not limited to, within and throughout the State of California;

b. DRAM price has been fixed, raised, maintained, and stabilized at a high and artificial level, including, but not limited to, within and throughout the State of California;

c. Sun has been deprived of the benefit of free and openly competitive negotiations for DRAM in the marketplace; and

d. Sun has been forced to pay artificially high prices for DRAM for use in its computer systems and network products.

81. As a direct and proximate result of Defendants' unlawful combination, conspiracy and/or agreement, Sun has been injured in its business and property in that it had to pay more for DRAM than it would have paid in an otherwise free and open marketplace. Sun is unable to state its damages with precision at this time, because that determination will require discovery and accounting analysis of Defendants' books and records. Nevertheless, under Section 16750(a) of the Business and Professions Code, Sun is entitled to interest on the aforementioned sum from the dates of service of this

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

17
COMPLAINT OF SUN MICROSYSTEMS, INC.

1   Complaint until entry of judgment thereon, to its costs of suit, including reasonable

2   attorneys' fees and treble damages.

3                    **THIRD CAUSE OF ACTION**

4              **(Unfair Competition Under § § 17200 Et Seq. Of**

5      **The California Business & Professions Code Against All Defendants)**

6        82.    Sun incorporates by reference, as if fully set forth, paragraphs 1 through 81

7   of this Complaint.

8        83.    Sun brings this action pursuant to Sections 17203 and 17204 of the

9   California Business and Professions Code, to obtain restitution from Defendants for acts,

10  as alleged herein, that violate Section 17200 *et seq.* of the California Business and

11  Professions Code, commonly known as the Unfair Competition Act.

12       84.    Beginning in or about January 1997, the exact date being unknown to Sun,

13  and continuing thereafter at least through 2002, Defendants by and through their officers,

14  directors, employees, agents, or other representatives committed, and continue to commit,

15  acts of unfair competition, as defined by Sections 17200 *et seq.* of the California Business

16  and Professions Code.  Defendants' acts of unfair competition, more fully alleged in

17  paragraphs 1 through 54 above, included participating in an unlawful combination,

18  conspiracy, and/or agreement to fix, raise, stabilize, and maintain the prices of, and/or

19  allocate the market for, DRAM prices and making misrepresentations, or fraudulently

20  concealing relevant information, concerning the reason for increased DRAM prices.

21       85.    Sun has standing to bring this action, because it purchased DRAM from

22  Defendants during the period January 1997 to the present.  In doing so, Sun was injured

23  by Defendants' unlawful actions, because it paid more for DRAM than it otherwise

24  would have, as described more fully above.  These higher prices caused Sun to lose

25  money and customers, who could not afford to purchase Sun's products containing

26  artificially high-priced DRAM.

27       86.    Defendants' conduct as alleged herein violates Section 17200 *et seq.*  The

28  unlawful combination, conspiracy, and/or agreement effected by Defendants, as well as

                              18
                 COMPLAINT OF SUN MICROSYSTEMS, INC.

1    their acts, omissions, misrepresentations, practices, and non-disclosures in furtherance

2    thereof, as alleged herein, constitute a common continuous and continuing course of

3    conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business

4    acts or practices within the meaning of California Business and Professions Code,

5    Section 17200 *et seq.* including, but in no way limited to, the following:

6         a.  Defendants' violations of 15 U.S.C. § 1 and Section 16700 *et seq.*, of

7              the California Business and Professions Code, as set forth in

8              Paragraphs 1 through 81, above;

9         b.  Defendants' acts, omissions, misrepresentations, practices, and non-

10             disclosures regarding how they set DRAM prices, as described in

11             Paragraphs 1 through 54 above – whether or not in violation of 15

12             U.S.C. § 1 and Section 16700 *et seq.* of the California Business and

13             Professions Code, and whether or not concerted or independent acts –

14             are otherwise unfair, unlawful, or fraudulent;

15        c.  Defendants' act and practices, as alleged in paragraphs 1 through 54,

16             are unfair to consumers of DRAM in the State of California and

17             throughout the United States, within the meaning of Section 17200 *et*

18             *seq.*, California Business and Professions Code; and

19        d.  Defendants' acts and practices, as alleged in paragraphs 1 through 54,

20             are fraudulent or deceptive within the meaning of Section 17200 *et*

21             *seq.* of the California Business and Professions Code.

22        87.   The aforementioned unlawful and unfair business practices of Defendants,

23   and each of them, have injured and present a continuing threat of injury to Sun.

24   Defendants' conduct has restrained competition in the DRAM market, has caused Sun to

25   pay supra-competitive and artificially-inflated prices for DRAM, and has deceived, and

26   may continue to deceive, Sun with respect to the manner in which the prices charged for

27   DRAM have been and will be set.  Thus, Sun is informed and believes that the

28

COMPLAINT OF SUN MICROSYSTEMS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1    Defendants may continue to persist in this conduct and commit the aforementioned acts

2    unless and until the Court orders the Defendants to cease and desist.

3        88.    Defendants and their co-conspirators have been unjustly enriched as a result

4    of their wrongful conduct and Defendants' unfair competition. Sun is accordingly

5    entitled to equitable relief, including restitution and/or disgorgement of all revenues,

6    earnings, profits, compensation, and benefits in order to restore money lost by Sun and

7    that may have been obtained by Defendants as a result of such unfair business acts and

8    practices, pursuant to the California Business and Professions Code, Sections 17203 and

9    17204. In addition, Sun seeks a permanent injunction enjoining Defendants, and their

10   officers, directors, employees, agents, or other representatives, and all others acting in

11   concert with Defendants to cease and desist from colluding together to fix, raise,

12   stabilize, and maintain the prices of, and/or allocate the market for, DRAM prices and

13   making misrepresentations, or fraudulently concealing relevant information, concerning

14   the reason for increased DRAM prices.

15   **H.    Tolling of the Applicable Statute of Limitations due to**

16          **Fraudulent Concealment**

17       89.    Sun had no knowledge of the combination and conspiracy alleged herein, or

18   of any facts that might have led to the discovery thereof in the exercise of reasonable

19   diligence, prior to June 2002 when defendant Hynix, and conspirators Infineon, Micron,

20   and Samsung first disclosed publicly that the Department of Justice was investigating the

21   DRAM industry.

22       90.    Sun could not have discovered the existence of the combination and

23   conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence

24   because of the deceptive practices and techniques of secrecy employed by the defendants

25   and their co-conspirators to avoid detection and affirmatively conceal such violations

26   including, without limitation, falsely attributing price increases to increased demand,

27   shortages in supply, increased manufacturing costs, increased prices of labor and of raw

28

20

COMPLAINT OF SUN MICROSYSTEMS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   materials, and/or insufficient production capacity.  Such false statements included,

2   without limitation:

3        91.    The statement of Samsung's vice president of marketing, Avo Kanadjian, in

4   a September 13, 1999, article, alleged more fully above in paragraph 49, that higher

5   prices were attributable to a DRAM shortage, which was concurred upon by Chee-Wai

6   Ho, director of product marketing for memory products at Infineon Technologies AG;

7   and,

8        92.    Hynix's April 15, 2002, representation, alleged in paragraph 54, that its

9   increased revenues resulted from increased demand in the DRAM market.

10        93.    Defendants and their co-conspirators also falsely informed their customers

11   that they were unable to sell their products at a lower price due to increased

12   manufacturing costs, increased prices of labor and of raw materials, and insufficient

13   production capacity.

14        94.    Sun had no reason to disbelieve these statements.  Furthermore, most of the

15   explanations provided by Defendants involved non-public and/or proprietary information

16   completely in Defendants' control such that Sun could not verify their accuracy.

17   Defendants' purported reasons for their price increases of DRAM were materially false

18   and misleading and were made for the purpose of concealing Defendants' anti-

19   competitive scheme as alleged herein.  In truth, at all relevant times, the price of DRAM

20   was artificially inflated and maintained as a direct result of the Defendants' anti-

21   competitive scheme, the operation of which was a substantial (but undisclosed) factor in

22   the pricing of DRAM during the relevant period.

23        95.    As a result of the fraudulent concealment of the conspiracy, Sun asserts the

24   tolling of the applicable statute of limitations affecting Sun's claims.

25   **I.    Damages/Restitution**

26        96.    During the relevant period, Sun purchased DRAM from Defendants, or

27   their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust violations herein

28   alleged, paid more for such products than it would have paid in the absence of such

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   antitrust violations.  As a result, Sun has sustained damages to its business and property

2   and Defendants wrongfully acquired money from Sun in an amount to be determined at

3   trial.

4   **J.**    **Prayer for Relief**

5      · WHEREFORE, Sun demands judgment against Defendants and each of them. as

6   follows:

7       97.    A declaration that the unlawful combination and conspiracy alleged herein

8   is an unreasonable restraint of trade of commerce in violation of Section 1 of the

9   Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2), and in violation of Sections 16700 *et seq.*

10  and 17200 *et seq.* of the California Business and Professions Code;

11      98.    An injunction enjoining, preliminarily and permanently, Defendants and all

12  those acting in concert or in active participation with Defendants from continuing the

13  unlawful combination and conspiracy alleged herein;

14      99.    An award to Sun of damages, as provided by law, and joint and several

15  judgments in favor of Sun against defendants, and each of them, in an amount to be

16  trebled in accordance with the federal and California antitrust laws;

17      100.   For restitution and disgorgement of revenues, earnings, profits,

18  compensation, and benefits that have been wrongfully taken by Defendants from Sun as

19  provided by 17200 *et seq.* of the California Business & Professions Code;

20      101.   An award to Sun for the costs of this suit (including expert fees), and

21  reasonable attorneys' fees, as provided by law; and

22

23

24

25

26

27

28

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

102.   An award to Sun for such other and further relief as the nature of this case may require or as this Court deems just, equitable and proper.

DATED:  March 2, 2006                          CROWELL & MORING LLP

                                    By: _____
                                         Kent A. Gardiner
                                         Kathryn D. Kirmayer
                                         1001 Pennsylvania Avenue, N.W.
                                         Washington, D.C.  20004
                                         Phone: 202-624-2578
                                         Fax:    202-628-5116

                                         R. Scott Feldmann
                                         Christine E. Cwiertny
                                         3 Park Plaza, 20th Floor
                                         Irvine, CA  92614-8505
                                         Phone: 949-263-8400
                                         Fax:    949-263-8414

                                         Counsel for Plaintiff
                                         Sun Microsystems, Inc.

## DEMAND FOR JURY TRIAL

103.   Sun demands a trial by jury, pursuant to Federal Rules of Civil Procedure, Rule 38(b), of all triable issues.

DATED:  March 2, 2006                          CROWELL & MORING LLP

                                    By: _____
                                         Kent A. Gardiner
                                         Kathryn D. Kirmayer
                                         1001 Pennsylvania Avenue, N.W.
                                         Washington, D.C.  20004
                                         Phone: 202-624-2578
                                         Fax:    202-628-5116

                                         R. Scott Feldmann
                                         Christine E. Cwiertny
                                         3 Park Plaza, 20th Floor
                                         Irvine, CA  92614-8505
                                         Phone: 949-263-8400
                                         Fax:    949-263-8414

                                         Counsel for Plaintiff
                                         Sun Microsystems, Inc.

COMPLAINT OF SUN MICROSYSTEMS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

**Certification of Interested Entities or Persons**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

DATED:  March 2, 2006                          CROWELL & MORING LLP

By: _____
    Kent A. Gardiner
    Kathryn D. Kirmayer
    1001 Pennsylvania Avenue, N.W.
    Washington, D.C.   20004
    Phone:  202-624-2578
    Fax:     202-628-5116

    R. Scott Feldmann
    Christine E. Cwiertny
    3 Park Plaza, 20th Floor
    Irvine, CA  92614-8505
    Phone:  949-263-8400
    Fax:     949-263-8414

    Counsel for Plaintiff
    Sun Microsystems, Inc.

24
COMPLAINT OF SUN MICROSYSTEMS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SUN MICROSYSTEMS,INC., ,

                Plaintiff (s),

        v.

HYNIX SEMICONDUCTOR,INC., ET
AL,

                Defendant(s).

No. C 06-01665 JW

ORDER SETTING INITIAL CASE
MANAGEMENT CONFERENCE
AND ADR DEADLINES

        IT IS HEREBY ORDERED that this action is assigned to the Honorable James Ware.  When
serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other
parties a copy of this order, the handbook entitled "Dispute Resolution Procedures in the Northern
District of California"  and all other documents specified in Civil Local Rule 4-2.  Counsel must
comply with the case schedule listed below unless the Court otherwise orders.

        IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution
(ADR) Multi-Option Program governed by ADR Local Rule 3.  Counsel and clients shall familiarize
themselves with that rule and with the handbook entitled "Dispute Resolution Procedures in the
Northern District of California."

## CASE SCHEDULE -ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 3/2/2006 | **Complaint filed** | |
| 10/16/2006 | Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R. 3-5 |
| | • file Joint ADR Certification with Stipulation to ADR Process or Notice of Need for ADR Phone Conference | Civil  L.R.  16-8 |
| 10/30/2006 | Last day to complete initial disclosures or state objection in Rule 26(f) Report, file Case Management Statement and file/serve  Rule 26(f) Report | FRCivP 26(a) (1) Civil  L.R . 16-9 |
| 11/6/2006 | **CASE MANAGEMENT CONFERENCE (CMC)  in Courtroom 8, 4th Floor, SJ at 10:00 AM** | Civil  L.R.  16-10 |

FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
CLERK
SAN JOSE DIVISION U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Case No. _____

STANDING ORDER REGARDING

CASE MANAGEMENT IN CIVIL CASES

This order sets forth requirements for initial case management in all civil matters assigned to District Judges James Ware, Ronald M. Whyte and Jeremy Fogel, and Magistrate Judges Patricia V. Trumbull, Richard Seeborg, and Howard R. Lloyd. All papers filed must include the case number of the action followed by the initials of the assigned district judge or magistrate judge and, if applicable, the initials of the magistrate judge to whom the action is referred for discovery or other pretrial activity.

Plaintiff shall serve a copy of this Standing Order on all parties to this action and on all parties subsequently joined, in accordance with Fed.R.Civ.P. 4 and 5. Following service, plaintiff shall file a certificate of service in accordance with Civil L.R. 5-6(a).

All disclosure or discovery disputes in cases assigned to district judges are referred to the assigned magistrate judge for determination pursuant to Fed.R.Civ.P. 72(a). Magistrate judges themselves handle disclosure and discovery disputes in the cases assigned to them.

Before selecting a hearing date for a motion before any of the judges of the San Jose Division, counsel must confer with opposing counsel to determine that the proposed hearing date will not cause undue prejudice.

Civil motions under Civil L.R. 7-2 in cases assigned to Judge Ware may be noticed for hearing on any Monday at 9:00 a.m.

Civil motions under Civil L.R. 7-2 in cases assigned to Judge Whyte may be noticed for hearing on any Friday at 9:00 a.m.

1   Civil motions under Civil L.R. 7-2 in cases assigned to Judge Fogel may be noticed for hearing only

2   after contacting Judge Fogel's judicial secretary, Teresa Fleishman, at 408-535-5426 and obtaining an available

3   date.

4   Civil motions under Civil L.R. 7-2 in cases assigned to Magistrate Judge Trumbull may be noticed for

5   hearing on any Tuesday at 10:00 a.m.

6   Civil motions under Civil L.R. 7-2 in cases assigned to Magistrate Judge Seeborg may be noticed for

7   hearing on any Wednesday at 9:30 a.m.

8   Civil motions under Civil L.R. 7-2 in cases assigned to Magistrate Judge Lloyd may be noticed for

9   hearing on any Tuesday at 10:00 a.m.

10   Pursuant to Fed.R.Civ.P. 16 and 26 and Civil L.R. 16-10(a), a Case Management Conference will be

11   held on _____ at _____, at the United States Courthouse, 280

12   South First Street, San Jose, California. This conference may be continued only by court order pursuant to Civil

13   L.R. 16-2(e). Parties may not stipulate to continue a Case Management Conference without court approval.

14   Pursuant to Civil L.R. 16-3, in advance of the Case Management Conference, counsel shall confer with

15   their respective clients and opposing counsel for the purposes specified in Fed.R.Civ.P. 26(f), Civil L.R. 16-8

16   and 16-9, and in patent cases, Patent L.R. 3.1 through 3.6. A meaningful meet and confer process prior to the

17   Case Management Conference and good faith compliance with the requirements of this Order are essential

18   elements of effective case management. Failure to meet and confer, to be prepared for the Case Management

19   Conference or to file a Joint Case Management Conference Statement may result in sanctions. Parties may, but

20   are not required, to attend the Case Management Conference.

21   In all "E-filing" cases when filing papers in connection with any motion for determination by a judge,

22   the parties shall, in addition to filing papers electronically, lodge with chambers a printed copy of the papers by

23   the close of the next court day following the day the papers are filed electronically. These printed copies shall be

24   marked "Chambers Copy" and shall be submitted to the Clerk's Office, in an envelope clearly marked with the

25   judge's name, case number and "E-filing Chambers Copy." Parties shall not file a paper copy of any document

26   with the Clerk's Office that has already been filed electronically.

27   IT IS SO ORDERED.

28   Dated: Effective on the date this order is filed, until further court order.

2

1

2

_____

James Ware
United States District Judge

3

4

5

_____

Ronald M. Whyte
United States District Judge

6

7

8

_____

Jeremy Fogel
United States District Judge

9

10

11

12

_____

Patricia V. Trumbull
United States Chief Magistrate Judge

13

14

15

_____

Richard Seeborg
United States Magistrate Judge

16

17

18

19

_____

Howard R. Lloyd
United States Magistrate Judge

20

21

22

23

24

25

26

27

28

3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUN MICROSYSTEMS, INC.,

        Plaintiff(s),

      v.

HYNIX SEMICONDUCTOR, INC., et al.,

        Defendant(s).

No. C 06-01665 PJH

**ORDER SETTING CASE MANAGEMENT CONFERENCE**

[Reassigned Case]

TO ALL PARTIES AND COUNSEL OF RECORD:

The above matter having been reassigned to the Honorable Phyllis J. Hamilton. It is hereby ordered, pursuant to Fed. R. Civ. P. 16(b) and Civil L. R. 16-10, that a Case Management Conference shall be held in this case on **April 20, 2006**, at 2:30 p.m., in Courtroom 3, 17th Floor, Federal Building, 450 Golden Gate Avenue, San Francisco, California.

Counsel shall meet and confer as required by Fed. R. Civ. P. 26(f) prior to the Case Management Conference with respect to those subjects set forth in Fed. R. Civ. P. 16(c) and all of the agenda items listed below. **Not less than seven (7) calendar days** before the conference, counsel shall file a joint case management statement addressing each agenda item in the order in which they are listed below. As required by Civil L. R. 16-9, the case management statement shall include the joint discovery/disclosure report required by Rule 26(f). A proposed order is not necessary. Following the conference, the court will enter its own Case Management and Pretrial Order. If any party is proceeding without counsel, separate statements may be filed by each party.

Each party shall appear personally or by counsel prepared to address all of the matters referred to in this Order and with authority to enter stipulations and make admissions pursuant to this Order. Any request to reschedule the date of the conference shall be made in writing, and by stipulation if possible, at least ten (10) calendar days before the date of the conference and must be based upon good cause.

//

//

**AGENDA ITEMS**

1.   Jurisdiction: Does the court have  subject matter jurisdiction over all of the plaintiff's claims and defendant's counter-claims?  What is the basis of that jurisdiction?  Are all the parties subject to the court's jurisdiction?  Do any parties remain to be served?

2.   Facts: What is the factual basis of plaintiff's claims and defendant's defenses?  What is the factual basis of defendant's counter-claims and plaintiff's defenses?  Provide a brief description of the events underlying the action.

3.   Legal Issues: What are the legal issues genuinely in dispute?

4.   Narrowing of Issues: Are there dispositive or partially dispositive issues appropriate for decision by motion or by agreement?

5.   Motions: What motions are anticipated?

6.   Discovery: What discovery does each party intend to pursue?  Can discovery be limited in any manner?

7.   Confidentiality:  Does either party anticipate the need for a protective order for confidential documents disclosed in discovery or the need to file any documents under seal?

8.   Relief: What relief does plaintiff seek?  What is the amount of damages sought by plaintiff's claims and by defendant's counter-claims?  Explain how damages are computed.

9.   ADR: Which ADR process do the parties jointly request?

10.   Settlement: What are the prospects for settlement?  Does any party wish to have a settlement conference with a magistrate judge?

11.   Magistrate Judge Trials: Will the parties consent to have a magistrate judge conduct all further proceedings including trial?

12.   Trial: Will this case be tried by jury or to the court?  Is it feasible or desirable to bifurcate issues for trial?  What is the anticipated length of the trial?  When considering these issues, bear in mind that trials are conducted Monday-Tuesday, Thursday-Friday, from 8:30 a.m. to

2

1   1:30 p.m., with two 15-minute breaks. Is it possible to reduce the length of the trial by
2   stipulation, use of summaries or statements, or other expedited means of presenting
3   evidence?

4   13.    Related Cases: Are there any related cases pending in this Court?

5
6   14.    Class Actions: If a class action, how and when will the class be certified?

7   15.    Scheduling: What are the earliest reasonable dates for discovery cutoff, hearing
8   dispositive motions, pretrial conference and trial? When considering this issue, bear in mind
9   that the court hears dispositive motions no later than 120 days before trial.

10  16.    Such other matters as any party considers conducive to the just speedy and
11  inexpensive resolution of this matter.

12  **17.    In order to assist the court in evaluating any need for disqualification or recusal,**
13  **the parties shall disclose to the court in the case management statement, the**
14  **identities of any persons, associations, firms, partnerships, corporations**
15  **(including parent and controlled subsidiary corporations) or other entities known**
16  **by the parties to have either 1) a financial interest in the subject matter at issue**
17  **or in a party to the proceeding or 2) any other kind of interest that could be**
    **substantially affected by the outcome of the proceeding.**
18  **If the disclosure of non-party interested entities or persons has already been**
    **made as required by Civil Local Rule 3-16, the parties may simply reference the**
19  **pleading or document in which the disclosure was made.**

20
21      IT IS SO ORDERED.

22  Dated: March 31, 2006

23                                          _____
24                                          PHYLLIS J. HAMILTON
                                            United States District Judge
25

26

27

28

3

**Judge Phyllis J. Hamilton**
Courtroom 3, 17th Floor

Nichole Heuerman, Courtroom Deputy
(415) 522-2023

## GENERAL STANDING ORDER

1.   CALENDARS

   Civil law and motion is held on Wednesday at 9:00 a.m.
   Criminal law and motion is held on Wednesday at 1:30 p.m.
   Case Management and Pretrial Conferences are held on Thursday at 2:30 p.m.

   Counsel need not reserve a hearing date for motions, but should call the Court Deputy in advance for dates that are unavailable. Noticed dates may be reset as the court's calendar requires.

2.   CORRESPONDENCE

   When corresponding with the court by letter or when submitting a letter brief, provide the original and one copy. Letters should be delivered to the Clerk's Office in San Francisco in an envelope addressed to Judge Hamilton. Do not fax anything to chambers without calling chambers first. A copy marked "Chambers Copy" of all documents filed in the Clerk's Office shall be filed along with the original.

3.   E-FILING/CHAMBERS COURTESY COPIES

   In all "E-Filing" cases, in addition to filing papers electronically, the parties are required to lodge with chambers one paper copy of each document that is filed electronically no later than noon on the day following the day that the papers are filed electronically. These printed copies shall be marked "Chambers Copy" and **shall be submitted to the Clerk's Office**, in an envelope clearly marked with the judge's name, case number, and "Chambers Copy." Parties shall not file a paper copy of any document with the Clerk's Office that has already been filed electronically.

   Notwithstanding the 12:00 midnight filing deadline provided by General Order 45, **all documents e-filed in cases assigned to Judge Hamilton must be completed by 6:00 p.m. on the due date.**

**PLAINTIFF IS ORDERED TO SERVE COPIES OF THIS ORDER AT ONCE UPON ALL PARTIES TO THIS ACTION AND UPON ALL PARTIES SUBSEQUENTLY JOINED IN ACCORDANCE WITH RULES 4 AND 5 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND TO FILE WITH THE CLERK OF THE COURT A CERTIFICATE REFLECTING SUCH SERVICE.**