UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUN MICROSYSTEMS INC.,

    Plaintiff,

    v.

HYNIX SEMICONDUCTOR INC., et al.,

    Defendants.
_____/

No. C 06-1665 PJH

**ORDER GRANTING MOTION TO DISMISS**

This Document Also Relates to:

Unisys Corp. v. Hynix et al.
(C06-2915 PJH)
_____/

    Defendants' motion to dismiss plaintiffs' consolidated complaint came on for hearing before this court on March 7, 2007. Plaintiffs, Sun Microsystems, Inc. ("Sun") and Unisys Corporation ("Unisys")(collectively"plaintiffs"), appeared through their counsel, Kathryn Kirmayer and Jerome A. Murphy. Defendants appeared through their counsel, Kenneth O'Rourke, Terrence Truax, Kenneth Keller, Steven H. Bergman, Julian Brew, James G. Kreissman, Alejandro Vallejo, Renato Mariotta, Steven H. Morrissett, and Margaret J. Simpson. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, the court hereby GRANTS defendants' motion, for the reasons stated at the hearing and as follows.

## **BACKGROUND**

    Plaintiffs are corporations involved in the technology field. Sun is a leading maker of computer servers, workstations, and storage systems, with recent revenues of approximately $11.1 billion. Unisys is a global technology services and solutions company,

offering services in consulting, systems integration, outsourcing, infrastructure, and server technology. Both entities purchased dynamic random access memory ("DRAM") from the fifteen defendants in this action.[1] DRAM is an electronic memory microchip that is used to store digital information and provide high-speed storage and retrieval of data, and all defendants are engaged in the manufacture, sale, and/or distribution of DRAM.

On September 1, 2006, plaintiffs filed a consolidated complaint against defendants. See Consolidated Complaint for Damages and Injunctive Relief ("Complaint"). Plaintiffs allege that, from 1997 through 2002, defendants engaged in a conspiracy to control DRAM production capacity, raise DRAM prices, allocate customers, and otherwise unlawfully overcharge their DRAM customers. See id. at ¶¶ 1, 69. As a result, plaintiffs allege that they suffered injury, in that they paid more for DRAM than they otherwise would have in the absence of defendants' conspiracy, and they seek damages accordingly. Id. at ¶¶ 74, 79-80, 86.

In addition to these allegations, plaintiffs' consolidated complaint also attempts to illuminate the method by which each plaintiff entity actually purchased DRAM from defendants. Each plaintiff purchased DRAM slightly differently. The relevant allegations with respect to each is as follows:

**Sun**. Sun purchased DRAM in two ways. First, Sun would enter into direct negotiations with defendants, whereby Sun would negotiate price, quantity, and type of DRAM. See Complaint, ¶ 11. Sun entered into these negotiations on behalf of itself (i.e., in order to secure DRAM for use and manufacture of DRAM products at its own Sun facilities), and also on behalf of its "external" manufacturers (i.e., Sun has contracts with

---

[1] The defendants are: Hynix Semiconductor Inc., and Hynix Semiconductor America Inc. ("Hynix"); Mosel-Vitelic Inc., and Mosel-Vitelic Corporation ("Mosel-Vitelic"); Nanya Technology Corporation, and Nanya Technology Corporation USA ("Nanya"); Winbond Electronics Corporation, and Winbond Electronics Corporation America ("Winbond"); Elpida Memory, Inc., and Elpida Memory (USA) Inc. ("Elpida"); Mitsubishi Electric Corporation, Mitsubishi Electric and Electronics USA, Inc., and Mitsubishi Electric Europe B.V. ("Mitsubishi"); Infineon Technologies AG, and Infineon Technologies North America Corporation ("Infineon")(collectively "defendants").

third party manufacturers, who manufacture goods containing DRAM for Sun's benefit).  Id. Second, Sun purchased DRAM through private bidding auctions that it conducted at its headquarters in San Jose.  Both US and foreign DRAM suppliers participated in these auctions, and Sun would purchase DRAM from winning bidders.  The DRAM that Sun purchased as a result of these auctions was also for use both at Sun's facilities and at its external manufacturers' facilities.  Id.  All the DRAM purchased by Sun, whether as a result of direct negotiations with defendants, or the private auction process, was "delivered both throughout the United States and the world."  Id.

**Unisys**.  Unisys purchased its DRAM through direct negotiations with "some of the defendants."  See Complaint, ¶ 12.  Unisys does not allege that it had any private auction process in place for the purchase of DRAM.

Plaintiff's consolidated complaint asserts three causes of action against defendants: (1) violation of section 1 of the Sherman Act; (2) violation of California's state antitrust statute, the Cartwright Act; and (3) violation of California's Unfair Competition Act, Cal. Bus. & Prof. Code §§ 17200 et seq.  See Complaint, ¶¶ 68-87.

Defendants have jointly filed a motion to dismiss plaintiffs' consolidated complaint. Defendants categorize plaintiffs' allegations and claims as based on either foreign or domestic injury, and they seek (a) dismissal of plaintiffs' claims based on foreign injury, both for lack of subject matter jurisdiction and for failure to state a claim; and (b) dismissal of plaintiffs' claims based on both foreign and domestic injury, for failure to satisfy notice pleading requirements.  In sum, however, defendants seek dismissal of all three claims brought by plaintiffs.

**DISCUSSION**

A.  Legal Standards

   1.  12(b)(1) standard

On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing subject matter jurisdiction (even though it is defendants' motion).

3

See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994); Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989). In determining the motion, the court must consider the allegations of the complaint as true. See Valdez v. United States, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), aff'd 56 F.3d 1177 (9th Cir. 1995).

2.  12(b)(6) standard

A court should dismiss a claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. See, e.g., Broam v. Brogan, 320 F.3d 1023, 1033 (9th Cir. 2003) (citations omitted). In evaluating a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000) (citations omitted).

3.  FRCP 8 standard

Federal Rule of Civil Procedure ("FRCP") 8 requires that a complaint set forth all claims in short and plain terms, and in a manner that is simple, concise and direct. See Fed. R. Civ. Proc. 8(a). The complaint need not, however, allege every fact constituting the claim for relief or detailed evidentiary facts – it need only give fair notice of the plaintiff's claim so that the opposing party can respond, undertake discovery and prepare for trial. See, e.g., Conley v. Gibson, 355 U.S. 41, 47-48 (1957); see also Bautista v. Los Angeles County, 216 F.3d 837, 843 (9th Cir. 2000).

B.  Defendants' Motion to Dismiss

Defendants raise three overriding arguments in support of their motion to dismiss. First, defendants assert that plaintiffs' claims, to the extent they are based on DRAM "delivered ... throughout the ... world", should be dismissed for lack of subject matter jurisdiction pursuant to the Foreign Trade Antitrust Improvements Act ("FTAIA"). Second, defendants contend that plaintiffs lack standing to pursue these claims, which defendants

4

assert are based on 'foreign injuries.'  Finally, defendants argue that plaintiffs' complaint in its entirety must be dismissed – including claims based on *both* foreign and domestic injuries – because plaintiffs have failed to set forth a "short and plain statement of the claim" as required by FRCP 8(a).

The lion's share of defendants' legal arguments, however, is targeted at the so-called 'foreign injury' claims that they assert are present in plaintiffs' consolidated complaint.  Specifically, defendants contend that, since plaintiffs' claims are based at least in part on artificially high DRAM prices that were paid by plaintiffs – or by independent third party manufacturers – for DRAM that was delivered abroad for use abroad, this 'foreign' portion of plaintiffs' claims is not recoverable under the FTAIA and the Empagran line of cases.  See 15 U.S.C. § 6a; F. Hoffman-La Roche Ltd. v. Empagran S.A., 542 U.S. 155 (2004)("Empagran I")(where there is "significant foreign anticompetitive conduct []with an adverse domestic effect and []an independent foreign effect giving rise to a claim" FTAIA bars jurisdiction); Empagran S.A. v. F. Hoffman-La Roche, Ltd., 417 F.3d 1267 (D.C. Cir. 2005)("Empagran II").  Although defendants recognize that such claims might be allowed to proceed in the event plaintiffs can satisfy the "domestic injury" exception to the FTAIA's prohibitions, defendants contend that this is not the case here.  See Empagran I, 542 U.S. at 162 (FTAIA not a bar where foreign conduct has a "direct, substantial, and reasonably foreseeable effect" on domestic commerce and the "effect ... gives rise to a [Sherman Act] claim"); Empagran II, 417 F.3d at 1271 (proximate causation necessary between domestic effects of foreign conduct and the foreign injury claim in order for FTAIA's domestic injury exception to apply).

Plaintiffs, naturally, resist.  They respond by pointing out that, as a preliminary matter, their claims cannot be forcibly broken down into foreign injury claims, as distinguished from domestic injury claims.  Neither the FTAIA nor Empagran and its progeny sanction such an approach; that law simply holds that, where a foreign plaintiff seeks redress for foreign conduct that has led to independent foreign harm, subject matter

jurisdiction will not be found. Plaintiffs distinguish this case by pointing out that, since it is undisputed that at least some portion of their claim is based on DRAM purchases made and delivered within the U.S. and that jurisdiction over this portion of the claim is warranted, there is no restriction on the court's ability to assume jurisdiction for the whole of plaintiffs' claim – including the foreign-based portion. Even assuming, though, that the court allows plaintiffs' foreign injury and domestic injury claims to be segregated and evaluated separately, plaintiffs assert that their foreign injury claims would still be viable, since the claims arise directly from the domestic anticompetitive effects of defendants' global conspiracy.

In sum, resolution of defendants' motion requires, in turn, resolution of several sub-issues: (1) whether plaintiffs' claims can and should be segregated into domestic injury and foreign injury components; (2) if so, whether the FTAIA's jurisdictional bar is applicable to the foreign injury component of plaintiffs' claims; and (3) if so, whether plaintiffs have sufficiently stated or demonstrated that the domestic injury exception to the FTAIA is applicable, such that jurisdiction is after all warranted.

In analyzing these issues, the court notes that many of the arguments raised by plaintiffs in their papers, and at the hearing on this matter, make intuitive sense. For example, plaintiffs are correct that the FTAIA's application is likely not triggered by allegations of foreign "injury" but rather by allegations of foreign "conduct," and is primarily meant to redress "wholly foreign transactions" – a scenario that does not quite fit comfortably with the present scenario, in which foreign transactions have been alleged in connection with domestic transactions. See Empagran I, 542 U.S. at 163 (citing House Report noting that FTAIA clearly covers "wholly foreign transactions as well as export transactions... but [not] import transactions"). Moreover, plaintiffs' existing allegations and supporting declarations regarding the various methods by which plaintiffs purchased DRAM from defendants – Sun, in particular – may conceivably be sufficient to satisfy the domestic injury exception to the FTAIA, with respect to any distinct claims based on foreign injury or

harm.

This is not to say, however, that there is no tension between plaintiffs' position, and relevant legal precedent. The court acknowledges that under the Empagran line of cases, it is well-settled that, where a foreign plaintiff seeks redress for harm resulting from primarily foreign conduct – and the harm is independent from any U.S. domestic effects of the conduct – no subject matter jurisdiction is possible. See, e.g., Empagran I, 542 U.S. 155 ; Empagran II, 417 F.3d 1267; In re Monosodium Glutamate Antitrust Litig., 477 F.3d 535 (8th Cir. 2007). Accordingly, in the event that plaintiffs' claims are severable, and are furthermore determined to be based in part on purchases made by wholly foreign third parties abroad, this line of cases may very well prove instructive.

Preliminarily, however, the court must first be able to define the precise nature of plaintiffs' claims, and to identify with specificity the exact 'domestic injury' and 'foreign injury' allegations upon which defendants assert that plaintiffs claims are based. Without this information, the court cannot begin to determine any of the above issues.

In this respect, plaintiffs' complaint leaves much to be desired. While plaintiffs do not dispute that there is some portion of their claims that is based, as defendants contend, on foreign harm, it is extremely difficult for the court to tell which allegations correspond to that portion of plaintiffs' claims. There are no allegations, for example, that directly distinguish between DRAM delivered in the U.S. and DRAM delivered abroad, between DRAM purchased in the U.S. and DRAM purchased abroad, or between DRAM purchased by plaintiffs directly and purchased by third parties directly. Rather, plaintiffs' allegations paint with broad brush strokes that focus on the act of DRAM deliveries as opposed to the act of DRAM purchases, making it impossible to specifically identify the nature and range of claims based on DRAM purchased here, or abroad. This, in turn, makes it impossible for either defendants or the court to accurately assess whether there really are claims being alleged by plaintiffs that can be characterized as wholly foreign, and what portion of plaintiffs' claims can be characterized as such.

7

In sum, while the court may very well ultimately conclude that plaintiffs are correct in stating that no severable claims based on foreign harm may be dismissed pursuant to the FTAIA, the court first requires more information and specificity from plaintiffs with respect to the claims they are alleging. In short, the court is of the opinion that plaintiffs have failed to state, in simple, concise and direct terms, a short and plain statement of their claims, consistent with the requirements of FRCP 8(a). While the court recognizes that plaintiffs' complaint need not allege every fact constituting its claim in great detail, it nonetheless finds that as currently plead, plaintiffs' consolidated complaint fails to provide fair notice of the entire basis – i.e., foreign harm versus domestic harm – for plaintiffs' claims. See, e.g., Conley v. Gibson, 355 U.S. 41, 47-48 (1957); see also Bautista v. Los Angeles County, 216 F.3d 837, 843 (9th Cir. 2000).

Accordingly, the court hereby DISMISSES plaintiffs' consolidated complaint for failure to comply with the notice pleading standard contemplated by FRCP 8(a), and grants plaintiffs leave to amend their complaint in order to set forth allegations that provide greater clarity and specificity with respect to that portion of plaintiffs' claims which is based on foreign harm, and that portion which is based on domestic harm. Specifically, and should plaintiffs choose to file an amended complaint, plaintiffs must amend their complaint to allege for each plaintiff: where the price for the DRAM purchases upon which plaintiffs base their claims was negotiated; where the DRAM purchases upon which plaintiffs base their claims were actually made; whether plaintiffs themselves, subsidiaries, or third parties made the actual purchases of DRAM; where any subsidiaries or third parties making DRAM purchases on plaintiffs' behalf were located;[2] where the DRAM was ultimately delivered or

---

[2] Plaintiffs have some degree of flexibility regarding the degree of specificity they should employ in alleging the existence and location of various worldwide subsidiaries and/or third party entities. The court is simply seeking to understand the volume of DRAM purchases and distribution taking place outside the U.S. as contrasted with that taking place inside the U.S., for which plaintiffs seek recovery of overcharges. To that end, if the number of plaintiffs' subsidiaries and third party entities numbers into the hundreds, for example, it would be sufficient for plaintiffs to simply identify by country and percentage number the subsidiaries and third party entities making DRAM purchases or taking deliveries of DRAM on behalf of plaintiffs.

distributed.  In addition, plaintiffs must specify which particular claims are being alleged by plaintiffs as indirect purchasers rather than direct purchasers.

In view of this holding, the court declines to reach the merits of defendants' remaining arguments with respect to subject matter jurisdiction pursuant to FRCP 12(b)(1), or with respect to lack of standing.

Any amended complaint must be filed no later than **Friday, May 4, 2007**. Defendants are granted until **Monday, June 4, 2007**, to either answer the amended complaint, or file a renewed motion to dismiss.  If defendants choose to file a motion to dismiss, they are instructed to file new motion papers in connection with such a motion.

**IT IS SO ORDERED.**

Dated: April 5, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge

9