Jerome A. Murphy *(pro hac vice)*
David D. Cross (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
Telephone:     202-624-2500
Facsimile:     202-628-5116
E-mail:        jmurphy@crowell.com
               dcross@crowell.com

Daniel A. Sasse (CA Bar No. 236234)
Theresa C. Lopez (CA Bar No. 205338)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Telephone:     949-263-8400
Facsimile:     949-263-8414
E-mail:        dsasse@crowell.com
               tlopez@crowell.com

*Counsel for Plaintiff Sun Microsystems, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| *Sun Microsystems, Inc., et al. v. Hynix Semiconductor, Inc., et al.* | Case Nos.:  C-06-01665 PJH |
|---|---|
| | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF THE HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................ii

SUMMARY.......................................................................................................................1

ARGUMENT.....................................................................................................................2

    A.    Requirements For Exclusion Of An Economist's Expert Testimony Under Federal Rule Of Evidence 702 And 703.......................................................................................2

    B.    Dr. Murphy's And Dr. Topel's Conclusions Rely On Unsupported And Untested Assumptions And Should Be Excluded...................................................................4

        1.    Dr. Murphy's Assumptions Regarding But-For Supply In His "Demand Only" Analysis Necessarily And Unavoidably Generate His Desired Conclusion And Therefore Do Not Constitute A Scientific Test Of The Existence Of A Conspiracy..................................................4

        2.    Doctors Murphy's And Topel's Assumptions Regarding But-For Supply In Their Econometric Analyses Are Results-Oriented, Unjustified, And "An Explicit Recognition Of Ignorance".................................6

        3.    Doctors Murphy's And Topel's Assumptions Regarding The Shape And Slope Of The Demand Curve For DRAM During The Conspiracy Period Are Unjustified And Their Results Hinge Entirely Upon Them.......................................................................................8

    C.    The Testimony of Drs. Murphy and Topel Is Contradicted by the Undisputed Factual Record and Therefore Is Inadmissible Under Rule 702. .............................11

CONCLUSION..................................................................................................................13

## TABLE OF AUTHORITIES

### CASES

*American Booksellers Assn., Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031 (N.D. Cal. 2001).................................................................................................................3, 10

*Blue Dane Simmental Corp. v. American Simmental Ass'n*, 178 F.3d 1035 (8th Cir. 1999)................................................................................................................ 3

*Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996) ................................ 3

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993).................. 11

*Claar v. Burlington R.R.*, 29 F.3d 499 (9th Cir. 1994) ....................................................... 2, 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)...............................3, 11

*Domingo v. T.K.*, 289 F.3d 600 (9th Cir. 2002)..................................................................... 3

*General Electric Company v. Joiner*, 522 U.S. 136 (1997) ..................................................... 3

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988)...........................................3, 11

*Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666 (D.C. Cir. 1977)..................................... 3

*New York v. Microsoft Corp.*, 224 F. Supp. 2d 76 (D.D.C 2002)......................................... 12

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) ........................... 11

*Robinson v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216 (N.D. Cal. 2003).............................. 11

*Target Market Publishing v. ADVO, Inc.*, 136 F.3d 1139 (7th Cir. 1998)................................ 3

### RULES

Federal Rule of Evidence 702.............................................................................................2, 11

Federal Rule of Evidence 703.................................................................................................. 2

ii

PL.'S MEM. OF POINTS AND AUTHORITIES RE MOTION. TO EXCLUDE THE TESTIMONY OF HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN M. MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702
CASE NO. C06-01665

Doc# 2739552\2

## SUMMARY

The Hynix defendants have offered a pair of economists, Doctors Kevin Murphy and Robert Topel, as expert witnesses in these cases. These economists intend to opine at trial that DRAM prices increased during the conspiracy period not because of the proven conspiracy to fix DRAM prices, but because of ordinary occurrences in the DRAM marketplace. Their opinions are unreliable, as they rest on assumptions for which they provided no support, either in their reports or depositions. For example, both economists offer certain predictions of DRAM prices in a "but for" world in which the defendants did not conspire. Their opinions regarding that "but for" scenario – which is that no overcharges occurred – depend upon their assumptions regarding the appropriate supply and demand curves to use. An additional opinion expressed only by Dr. Murphy rests upon a distinct additional unsupported assumption, regarding the supply curve for DRAM during defendants' conspiracy.

However, neither economist ever explained the economic justifications for these crucial assumptions regarding supply and demand curves, which are critical to their analysis and conclusions. They also did no research or empirical testing to confirm the reasonableness of those assumptions. Moreover, as Sun's expert economist Dr. Michael Whinston makes clear in his report, many minor changes made to these assumptions change entirely the results of Dr. Murphy's and Dr. Topel's analysis. Consequently, Doctors Murphy's and Topel's conclusions rely solely upon the accuracy of these unsupported assumptions. Their failure to offer any objective bases for these assumptions renders their conclusions unreliable.

They also say that there is no *economic* evidence that DRAM prices rose because of price-fixing. Of course, their opinions run afoul of the abundant and undisputed factual record, including guilty pleas by Hynix Semiconductor Inc. and various Hynix employees, admitting that

they *did*, in fact, conspire to fix DRAM prices, and that they *did*, in fact, fix DRAM prices and affect prices.

Rule 702 of the Federal Rules of Evidence expressly forbids expert testimony such as this which is not "based upon sufficient facts or data." The opinions of Doctors Murphy and Topel are grounded in arbitrary assumptions that lack support (and disregard Hynix's admission of liability), and so the conclusions flowing from those assumptions must be excluded.

## ARGUMENT

The Hynix defendants retained economists Kevin Murphy and Robert Topel to serve as expert witnesses in this case. Both men intend to opine at trial that the increase in DRAM prices during the conspiracy period was "

Redacted

" Exhibit 1, Expert Report of Kevin M. Murphy, Ph.D. ("Murphy Rep.") ¶ 10. Or as Dr. Topel puts it, that there is no compelling economic "

Redacted

" Exhibit 2, Expert Report of Robert Topel, Ph.D ("Topel Rep.") ¶ 6. For the reasons that follow, their conclusions are derived from certain core assumptions that they did not verify, and are otherwise unsupported by the record in these actions.

**A.    Requirements For Exclusion Of An Economist's Expert Testimony Under Federal Rule Of Evidence 702 And 703.**

Under Rule 702 of the Federal Rules of Evidence, district courts are both "authorized and obligated to scrutinize carefully the reasoning and methodology underlying" expert testimony. *Claar v. Burlington R.R.*, 29 F.3d 499, 501 (9th Cir. 1994). Courts must perform a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

2

PL.'S MEM. OF POINTS AND AUTHORITIES RE MOTION. TO EXCLUDE THE TESTIMONY OF HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN M. MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702 CASE NO. C06-01665

Doc# 2739552\2

*Id.* at 501 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). "This gate-keeping function is applicable to 'technical' and other 'specialized' expert testimony, in additional to the testimony of scientific experts." *Blue Dane Simmental Corp. v. American Simmental Ass'n*, 178 F.3d 1035, 1040 (8th Cir. 1999).

As the Supreme Court explained in *General Electric Company v. Joiner*, 522 U.S. 136, 146 (1997), "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." This teaching applies just as much to proffered economic testimony as to other technical and specialized expert testimony. *See, e.g., Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002). Thus, it comes as no surprise that courts routinely strike economic testimony where (as here), the opinion is linked to the record of the case only by way of the expert's "say so." *E.g., American Booksellers Assn., Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041 (N.D. Cal. 2001) (excluding economist's testimony in antitrust action because it contained too many unsupported assumptions); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807-08 (9th Cir. 1988) (affirming exclusion of economist's damages studies that rested on "unsupported assumptions"); *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C. Cir. 1977) (affirming exclusion of economist's testimony in antitrust case because it made unsupported assumptions about the appropriate demand elasticities).[1]

---

[1] *Accord, e.g., Target Market Publishing v. ADVO, Inc.*, 136 F.3d 1139, 1143 (7th Cir. 1998) (where economic expert's projections of lost profits were unsupported and based on mere speculation, district court may exclude proposed testimony); *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 – 22 (2d Cir. 1996) (approving exclusion of testimony based on conjecture and faulty assumptions).

3

PL.'S MEM. OF POINTS AND AUTHORITIES RE MOTION. TO EXCLUDE THE TESTIMONY OF
HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN M. MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702
CASE NO. C06-01665

Doc# 2739552\2

**B.      Dr. Murphy's And Dr. Topel's Conclusions Rely On Unsupported And Untested Assumptions And Should Be Excluded.**

Dr. Murphy intends to offer a pair of basic (and overly simplistic) opinions regarding the movement of DRAM prices during the conspiracy period. (Dr. Topel joins in the second opinion, although not the first.) For the reasons that follow, the opinions expressed by both economists are lacking in support, unreliable, results-oriented, and should be excluded.

Throughout their reports, the ultimate conclusions of Drs. Murphy and Topel – no price overcharges – simply reflect their unjustified and results-oriented choice of assumptions. In one of his two line of analysis – a line of analysis which Dr. Topel chose not to undertake – Dr. Murphy reaches the conclusion that the cartel did not restrict supply (and thus did not raise price) by simply assuming the absence of a supply restriction. In the second line of analysis, which Dr. Topel also chose to undertake, they adopt an econometric framework that is, in the words of Dr. Murphy, "                   Redacted                   ." They had little choice other than to adopt this particular framework, if they were to reach their desired conclusion that the cartel did not raise price: As shown in the Exhibit 3, Expert Report of Dr. Michael D. Whinston ("Whinston Rep."), modest and plausible deviations from Drs. Murphy's and Topel's arbitrary and unjustified assumptions reverse their conclusions and indicate that the cartel substantially raised prices. Whinston Rep.

¶¶ 10, 51 – 53, 63 – 67, 75 – 78, 87 – 89, and 103 – 104. In short, the econometric "analyses" of Drs. Murphy and Topel are unreliable and should be excluded.

        **1.      Dr. Murphy's Assumptions Regarding But-For Supply In His "Demand Only" Analysis Necessarily And Unavoidably Generate His Desired Conclusion And Therefore Do Not Constitute A Scientific Test Of The Existence Of A Conspiracy**

4

PL.'S MEM. OF POINTS AND AUTHORITIES RE MOTION. TO EXCLUDE THE TESTIMONY OF HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN M. MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702
CASE NO. C06-01665

Doc# 2739552\2

Dr. Murphy does not, of course, state that he has reached the conclusion that there was no supply restriction only by assuming that there was no supply restriction. Dr. Murphy instead cleverly states that he "

Redacted

" Murphy Rep. ¶ 96. In doing so, however, Dr. Murphy in fact makes an (understandably) unstated assumption about supply. Namely, he assumes that but-for supply is on average <u>below</u> his calculated "        " during the conspiracy. Whinston Rep. ¶¶ 51-52.

This is demonstrated in the following chart. The dashed red line shows Murphy's *assumed* but-for supply during the conspiracy. The assumed but-for supply starts at a lower level than the "        " prior to the conspiracy period and ends at a lower level than the "        " at the end of the conspiracy period. Unsurprisingly, it is also, on average, <u>below</u> Murphy's calculated "        "

**Murphy's "demand-only" analysis simply assumes his desired conclusion that the conspiracy had no effect**



Doc# 2739552\2

It is an immediate and unavoidable consequence of his assumed but-for supply that Murphy would find no evidence of a supply restriction, and thus no evidence of overcharges. His purported "test" for a supply restriction is to "ask" whether his calculated "supply" is on average below his assumed but-for supply. But his assumed but-for supply is, from the outset, already below his calculated "supply" during the conspiracy period. Murphy's conclusion was predetermined by his assumption and as such, does not constitute a reliable or scientific test of the existence or effect of a conspiracy.

Notwithstanding this, Dr. Murphy plans to testify that "

Redacted

" Murphy Rep. ¶ 96. Stated slightly differently, Dr. Murphy intends to argue that shifts in demand for DRAM – that alone and nothing else – accounts for the variation in DRAM prices during the conspiracy period. His analysis on this point shows nothing of the sort. Instead, he has shown only that if he begins by assuming his desired conclusion, then he can reach his desired conclusion.

> **2.    Doctors Murphy's And Topel's Assumptions Regarding But-For Supply In Their Econometric Analyses Are Results-Oriented, Unjustified, And "An Explicit Recognition Of Ignorance"**

In his second line of analysis, Dr. Murphy adopts an econometric framework that is, in Dr. Murphy's own words, "                Redacted                " Dr. Topel conducts the same analysis and it suffers from the same infirmities. The econometric analyses of Drs. Murphy and Topel are overly simplistic and hinge entirely upon arbitrary, unjustified, and results-oriented assumptions. Their shared conclusion is fragile – slight and plausible changes to their

6

PL.'S MEM. OF POINTS AND AUTHORITIES RE MOTION. TO EXCLUDE THE TESTIMONY OF
HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN M. MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702
CASE NO. C06-01665

Doc# 2739552\2

assumptions change their conclusion. *See* Whinston Rep. ¶ 13 (noting that Murphy's and Topel's conclusions "are highly dependent on the specification he assumes for his model"); *id.* ¶ 63 (same).

An analysis of their pricing model reveals its infirmity. They use a linear time trend for their pricing model, which "imposes a constant rate of change" in Murphy's supply variable. Whinston Rep. ¶ 64. This linear, "constant rate of change," assumption mirrors Dr. Murphy's straight-line supply assumption in his flawed "demand only" analysis. A linear time trend is an intellectual shortcut that assumes certain changes in supply over time, even when underlying supply and demand conditions remain fixed. *Id.* ¶ 64. However, "[e]conomic theory indicates that the quantity supplied in a competitive market should be a function of factors affecting cost and the market price." *Id.*

An intellectually rigorous pricing model – one that makes use of correct data and methods – will not need to use a linear time trend to "fill in the gaps" of the supply curve. Whinston Rep. ¶ 64. Dr. Murphy agrees, as he has equated the use of a time trend in a supply/price analysis as "'an explicit recognition of ignorance.'" Whinston Rep. ¶ 64 (citing Lynne Schneider, Benjamin Klein, Kevin M. Murphy (1981): "Governmental Regulation of Cigarette Health Information," Journal of Law and Economics 24: 575-612, page 583). By using a linear time trend, Drs. Murphy and Topel selected a specification that yields their desired conclusion – that Sun suffered no damages from the conspiracy. However, as Dr. Whinston points out, removal of the time trend yields an average overcharge of 23.2% in the conspiracy period. Whinston Rep. ¶ 65 n.32.

Even if their decision to use a linear time trend could be justified, neither economist performed any independent analysis to determine whether the linear time trend is consistent with the data on DRAM prices and supply <u>outside</u> of the conspiracy period. Whinston Rep. ¶¶ 68, 81.

7

Their failure to perform any sort of analysis – rigorous or otherwise – to confirm their assumptions renders their ultimate conclusions highly suspect and violative of Rule 702.

### 3.    Doctors Murphy's And Topel's Assumptions Regarding The Shape And Slope Of The Demand Curve For DRAM During The Conspiracy Period Are Unjustified And Their Results Hinge Entirely Upon Them.

It is of course true that demand for DRAM changed during the period that Drs. Murphy and Topel studied – for example, worldwide PC shipments went from approximately 72 million in 1996 to approximately 177 million in 2004, while the memory capacity in each PC shipped during that period increased dramatically. Whinston Rep. ¶ 37. However, Drs. Murphy's and Topel's opinions rest not merely on the increase in DRAM demand, but also on their crucial assumptions regarding the shape and slope of the demand curves for the conspiracy period. Specifically, Drs. Murphy and Topel assumed that the demand curves for the period would be straight lines with a slope of -2 (when measuring prices and quantities in logarithms). Murphy Rep. ¶¶ 85 and 91; Topel Rep. ¶ 42; Whinston Rep. ¶ 39.

However, as Dr. Whinston's report shows, even minor changes to Drs. Murphy's and Topel's assumptions yield very different results. Whinston Rep. ¶¶ 39 – 43. And in deposition, Dr. Murphy acknowledged that changes to his demand curve "          " would change his "                    ":

Redacted

8

Murphy Dep. Tr. 102:5 – 13. Likewise, Dr. Topel indicated that different assumptions about the shape and slope of the demand would yield different results:

Redacted

Exhibit 5, Transcript of Deposition of Robert Topel ("Topel Dep. Tr.") at 108:4 – 6; *id.* at 112:20 – 113:8.

This again raises the obvious question: What is the basis for Doctors Murphy's and Topel's assumptions regarding the shape and slope of the demand curve? Why and how did they come to assume the demand curves were always straight lines with a slope of -2, which they then used to generate their results?

Drs. Murphy and Topel have no good answers to these questions. They point to an ITC report on the DRAM industry as justification for their assumptions regarding the demand curve, *see* Murphy Rep. ¶ 89; Topel Rep. ¶ 40; Whinston Rep. ¶ 45. However, that ITC report does not support Drs. Murphy and Topel. First off, it says nothing about the shape of the demand curve, and Drs. Murphy and Topel admitted as much in their depositions:

Redacted

Murphy Dep. Tr. 111:3 – 15 (emphasis supplied).

9

Redacted

Topel Dep. Tr. 136:2 – 5 (emphasis supplied). But Dr. Topel, like Dr. Murphy, has no knowledge that they made this assumption. Topel Dep. Tr. 136:6 – 137:13.

If the ITC report doesn't support Drs. Murphy's and Topel's assumed demand curves, then what methodology did they use to form the assumption? And what did they do to test their unsupported assumption before applying it and offering opinions based on it? We do not know.

So, too, the ITC report does not really support Drs. Murphy's and Topel's assumed *slope* for their demand curves. The ITC report is brief and undescriptive of the methods it uses; does not identify the applicable time period for the analysis; and does not say whether it applied to worldwide DRAM sales, or only to sales in the United States. Whinston Rep. ¶¶ 45 – 46. Its relevance to Drs. Murphy's and Topel's analyses seems remote, at best.

Given the lack of specificity in the ITC report, one might have expected Drs. Murphy and Topel to have confirmed that its methods and data were suitable for their analyses. Whinston Rep. ¶ 45. It appears that they performed no such analysis, and they identified none in their deposition. In short, Drs. Murphy and Topel conducted no analysis – adequate or otherwise – to confirm the viability and soundness of their assumed demand curves. *Id.* ¶ 46. In the absence of any real support for their assumed demand curves, their opinions based on them should be disregarded as unreliable. *See, e.g., American Booksellers Assn., Inc. v. Barnes & Noble, Inc.,* 135 F. Supp. 2d at 1041 (excluding economist's testimony in antitrust action because it contained too many unsupported assumptions); *McGlinchy v. Shell Chem. Co.,* 845 F.2d at 807-08 (affirming exclusion of economist's damages studies that rested on "unsupported assumptions").

10

Doc# 2739552\2

**C.    The Testimony of Drs. Murphy and Topel Is Contradicted by the Undisputed Factual Record and Therefore Is Inadmissible Under Rule 702.**

Rule 702 permits an expert to testify only if his opinion is "based upon sufficient facts or data." Fed. R. Evid. 702; *see Robinson v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216, 1221 (N.D. Cal. 2003) (rejecting expert's opinion that was "directly refuted " by party's admissions). An essential factor courts must consider in determining whether to admit expert testimony is whether that testimony "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993). Moreover, "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995) (quoting *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)).

Doctors Murphy and Topel plan to testify that in their opinion "

Redacted    " during the conspiracy period were not caused by the conspiracy. Murphy Rep. ¶ 10; Topel Rep. ¶ 6. But this opinion is directly contradicted by the factual record in this case. Hynix admits in its guilty plea agreement that Hynix "and its coconspirators reached agreements on price increases and were able to institute price increases on DRAM sales to certain OEMs." Exhibit 6, Hynix Guilty Plea, at 4. Similarly, Hynix admitted that in periods of declining prices it reached agreements with its competitors "to limit the rate of price declines, which were achieved with varying levels of effectiveness." *Id.* Expert testimony that is directly contradicted by indisputable record facts is inadmissible.

This is not the first time that Dr. Murphy has attempted to provide an opinion that is

11

Doc# 2739552\2

contradicted by the undisputed facts in a case. Judge Kollar-Kotelly found that "Dr. Murphy's conclusions as to the effect of Microsoft's conduct upon Navigator and Java are factually in conflict with the conclusions of the appellate court that gave rise to the findings of liability in this case. *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 203 (D.D.C 2002) (citations omitted). The court went on to say that "[t]he Court harbors serious concerns as to the usefulness of Dr. Murphy's causation analysis. Most troubling to the Court in examining Dr. Murphy's analysis is the fact that many of the conclusions reached by Dr. Murphy cannot be reconciled logically with significant portions of the appellate court's opinion. *See supra* Part III.E.2.b.i. Based upon the Court's concerns as to the basis for Dr. Murphy's causation analysis, the Court ascribes little, if any, weight to this portion of Dr. Murphy's testimony." *Id.* at 204. In the present case, Dr. Murphy's entire testimony, including his ultimate opinion, is contradicted by the undisputed factual record and is inadmissible.

12

PL.'S MEM. OF POINTS AND AUTHORITIES RE MOTION. TO EXCLUDE THE TESTIMONY OF HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN M. MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702
CASE NO. C06-01665

Doc# 2739552\2

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should exclude the opinions of Doctors Murphy and Topel, because they depend upon assumptions regarding demand and supply curves that lack any proper basis, and are directly contradicted by the undisputed factual record of this case.

DATED: March 19, 2009                    CROWELL & MORING LLP

                                          /s/ David D. Cross

                                          Jerome A. Murphy
                                          David D. Cross
                                          Matthew J. McBurney
                                          1001 Pennsylvania Avenue, N.W.
                                          Washington, D.C.  20004-2595
                                          Phone: 202-624-2578
                                          Fax:    202-628-5116

                                          Daniel A. Sasse
                                          Theresa Lopez
                                          3 Park Plaza, 20th Floor
                                          Irvine, CA  92614-8505
                                          Phone: 949-263-8400
                                          Fax:    949-263-8414

                                          *Counsel for Plaintiff Sun Microsystems, Inc.*

13

Doc# 2739552\2