Jerome A. Murphy (*pro hac vice*)
David D. Cross (*pro hac vice*)
Matthew J. McBurney (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
Telephone:     202-624-2500
Facsimile:     202-628-5116
E-mail:        jmurphy@crowell.com
               dcross@crowell.com
               mmcburney@crowell.com

Daniel A. Sasse (CA Bar No. 236234)
Theresa C. Lopez (CA Bar No. 205338)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Telephone:     949-263-8400
Facsimile:     949-263-8414
E-mail:        dsasse@crowell.com
               tlopez@crowell.com

Counsel for Plaintiff Sun Microsystems, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| SUN MICROSYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> HYNIX SEMICONDUCTOR, INC., et al., <br><br> Defendants. | Case No. C 06-01665 PJH <br><br> **PLAINTIFF SUN MICROSYSTEMS, INC.'S OPPOSITION TO HYNIX SEMICONDUCTOR INC. AND HYNIX SEMICONDUCTOR AMERICA INC.'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS ROBERT MARSHALL PURSUANT TO FED. R. EVID. 702 & 403 AND NANYA TECHNOLOGY CORP. AND NANYA TECHNOLOGY CORP. USA'S JOINDER THEREIN** <br><br> Date:   May 7, 2009 <br> Time:   2:30pm <br> Place:  Courtroom 5, 17th Floor <br> Judge:  Hon. Phyllis J. Hamilton |

I.      **INTRODUCTION**

On March 19, 2009, defendants Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. ("Hynix") moved to exclude or limit the testimony of Dr. Robert Marshall. This is quite remarkable since Hynix had earlier moved for summary judgment on August 8, 2008 on the very same grounds, namely that: "Because Marshall's opinion is not supported by the facts, it does not establish by a reasonable probability that Defendants' conduct caused injury to Plaintiffs . . . ." Defendant's Notice of Motion and Motion for Summary Judgment and, in the Alternative, Summary Adjudication; Memorandum in Support Thereof ("Def. Aug. 8, 2008 Mot.") at 20 (Sun Docket No. 384).

The Court should reject this latest, redundant motion because it makes the same arguments, often in the same or similar words,[1] which the Court considered and rejected by Order entered March 31, 2009. Order Granting Motion to Dismiss; Denying Motion to Exclude; and Granting Summary Judgment in Part and Denying Summary Judgment in Part ("March 31 Order") (Sun Docket No. 548). As the Court summarized Dr. Marshall's opinions in that Order:

> Dr. Marshall was asked to assume that the defendants engaged in a conspiracy to fix the price of DRAM sold to the Target OEMs, and then to undertake an economic analysis to determine whether the defendants' conspiracy had an effect on the prices of DRAM sold to the plaintiffs. After reviewing numerous documents and deposition testimony produced in the case, Dr. Marshall opined that the prices paid by the Target OEMs and the plaintiffs moved closely together before, during, and after the defendants' admitted conspiracy, and that four characteristics of the DRAM industry led the Target OEMs' prices, other purchasers' prices, and the market-wide prices to move together. . . .
>
> Dr. Marshall further opines that the close relationship between the Target OEMs' prices, market-wide prices, and plaintiffs' prices is suggested and confirmed by: . . . evidence of pricing communications . . . : visual inspection of the prices . . .; and standard regression analyses which tested the relationship between prices paid by the Target OEMs and the prices paid by plaintiff. . . . it would have been contrary to defendants' economic

---

[1] *Compare* "having eschewed fact-based analyses" (Defendants' Motion to Exclude or Limit the Testimony of Plaintiff's Expert Witness Robert Marshall ("Defs.' March 19 Mot.") at 14), *with* "[h]aving chosen to eschew an analysis" (Def. Aug. 8, 2008 Mot. at 10).

> incentives to prevent the admitted price increases to the Target OEMs from affecting the plaintiff . . . . Based on all this, Dr. Marshall concludes that the defendants' conspiracy affirmatively affected the price of DRAM sold to plaintiff.

March 31 Order at 48-49.

In the March Order, the Court was required to consider the very same arguments now improperly asserted <u>a second time</u> in the March 19, 2009 motion. In doing so, moreover, the Court categorically rejected all the arguments now directed at Dr. Marshall's opinions.

## II. ARGUMENT

1. **The Pleas**: Hynix asserts for the second time that "[t]he plea agreements do not provide a sound foundation for Professor Marshall" to find that the conspiracy affected Sun's prices. Defs.' March 19 Mot. at 8. But in the March Order, the Court confronted and rejected that same argument:

> First, to the extent defendants take issue with the experts' reliance on the conduct admitted . . . in their guilty pleas in 'assuming' the existence of a price-fixing conspiracy aimed at the Target OEMs, rather than independently proving such conduct, the court finds this objection meritless. The guilty pleas are properly in evidence, and the experts are entitled to base their opinions on the facts established therein. . . . the experts' reliance thereon does not render their testimony objectionable as a matter of law.
>
> Second, defendants' argument fails because, properly read, Dr. Marshall's testimony *does* undertake an explanation for whether and how defendants' price-fixing conspiracy with respect to the Target OEMs could have artificially raised prices on an industry-wide basis. Specifically, Dr. Marshall's testimony opines: that based on a visual understanding of the relationship between DRAM pricing for Target OEMs and plaintiff, and furthermore on the results of regression analyses that confirm a closely correlated relationship between Target OEM pricing and plaintiff's pricing, and based further on the documents in evidence demonstrating a conspiracy that extended beyond simply the Target OEMs, that DRAM pricing for Target OEMs moved together with plaintiff's DRAM prices; and that, when the nature of the DRAM industry is considered together in conjunction with this closely correlated relationship, it would not have been economically plausible for defendants to restrict their DRAM price-fixing conspiracy to the Target OEMs.

1    March 31 Order at 55-56 (emphasis in original).  As the Court then concluded:  "This expert

2    testimony warrants presentation to a jury . . . [f]or when taken in conjunction with the totality of

3    all the other evidence submitted by plaintiff, Dr. Marshall's causation theory is supported by

4    more than just the correlation analysis."  March 31 Order at 56.

5           2.      **Output Restriction**:  Hynix also asserts for the second time that "Professor

6    Marshall performs no independent analysis to determine if output was in fact restricted during

7    the relevant time period . . . ."  Defs.' March 19 Mot. at 11.  But, here again, in the March Order,

8    the Court confronted and rejected that same argument:

9           [T]he court has already noted that plaintiff is not legally required
            to prove defendants' participation in a supply reduction as an
10          element of causation.  As such, and as plaintiff points out,
            plaintiff's experts cannot be faulted for failing to demonstrate that
11          a supply reduction was the actual mechanism by which the
            industry-wide price were raised . . . .
12

13   March 31 Order at 52.  The Court further noted that Dr. Marshall in fact points to evidence in the

14   record indicating that "'defendants engaged in a variety of supply restrictions.'"  *Id.*  (citing hand

15   written Hynix notes, e-mails and De Dios testimony).  The Court took notice of defendants'

16   criticisms of Dr. Marshall's cited evidence, but pointed out that "these challenges . . . must

17   ultimately be decided by the trier of fact."  *Id.* at 53.

18          3.      **Marshall's Opinion As To Whether Target OEM Prices Caused Changes In**

19   **Sun Prices**:  Hynix further asserts, for the second time, that "Marshall offers no opinion about

20   whether changes in Target OEM prices 'caused' changes in Sun's prices . . . ."  Defs.' March 19

21   Mot. at 6, 13.  Here again, in the March Order, the Court confronted and rejected that same

22   argument:

23          Dr. Marshall does not opine, as defendants suggest, that plaintiff's
            increased price was caused by the Target OEMs' increased price
24          and generic market forces.  Rather, Dr. Marshall's testimony is (as
            noted above) that defendants' conspiracy to raise prices to the
25          Target OEMs actually reached farther than the Target OEMs and
            encompassed plaintiff, and that proof of the conspiracy's effect on
26          plaintiff is corroborated by the relationship between Target OEM
            pricing and plaintiff's DRAM pricing over time, as well as the
27          presence of certain factors in the DRAM industry that would have
            made it economically implausible for the defendants to limit their
28

> price-fixing conspiracy solely to the Target OEMs. While the distinction between defendants' characterization of Dr. Marshall's testimony and Dr. Marshall's actual testimony is a subtle one, this does not make it insignificant. It is the difference between a theory that hinges plaintiff's pricing primarily on factors outside defendants' control, and a theory that properly hinges plaintiff's pricing on defendants' actual conduct. Thus, the court views plaintiff's causation theory as one that presents a sufficiently direct causal link between defendants' conduct and plaintiff's injury to pass the proximate cause hurdle.

March 31 Order at 58.

4. **<u>Effect Of The Conspiracy On Target OEMs Pricing</u>**: In addition, Hynix complains, for a second time, that Professor Marshall "made no attempt to determine whether or to what extent any conspiratorial conduct by Hynix . . . impacted the DRAM prices paid by the Target OEMs." Defs.' March 19 Mot. at 5. Hynix made the same argument in their motion for summary judgment last August, asserting that: "he has no facts to corroborate . . . his conclusion that the Defendants had the effect on the prices paid by the Target OEMs that his analysis assumes." Def. Aug. 8, 2008 Mot. at 27.

The Court's March Order rejected all attacks on Dr. Marshall, and specifically noted that the pleas confess the cartels' "effectiveness in raising DRAM prices." March 31 Order at 44. It also points out that Dr. White undertook the very study that Hynix complains Dr. Marshall did not. As the Court explained:

> First, Dr. White had to determine the impact of the defendants' admitted conspiracy on the prices paid for DRAM chips and modules by the Target OEMs. . . . The prediction equation allowed Dr. White to arrive at a price index of the Target OEMs' but for prices.

March 31 Order at 50-51. In his Rebuttal Report, moreover, Dr. Marshall points out that he had now studied the opinions and report of Dr. White and found "that his opinions provide even further corroboration of my own." Ex. 1, Marshall Reb. Rep. ¶ 26.[2] As a result, there is empirical evidence in the record that the Target OEMs pricing was indeed affected by the

---

[2] All references to exhibits are to the Declaration of David Cross, filed herewith.

ROBERT MARSHALL AND NANYA'S JOINDER THEREIN
CASE NO. 06-01665 PJH
4

1 conspiracy.

2      5.    **The Conspiracy Caused Sun To Pay Higher Prices**:  Hynix further complains,
3 for a second time, that Dr. Marshall should be restrained from giving the jury his opinion "'that
4 defendants' conspiracy caused plaintiffs to pay higher prices for DRAM than they otherwise
5 would have absent the conspiracy.'"  Defs.' March 19 Mot. at 16.  This argument is based on the
6 following subsidiary contentions:  (1) that he conducted no study to try to link specific conduct
7 to particular prices Sun paid; (2) "correlation is not proof of causation"; and (3) his reading of
8 the guilty pleas cannot support such an opinion.  *Id.* at 16-18.

9      Here again, the Court's March Order has already considered and rejected these assertions,
10 finding that:

- Evidence that defendants targeted Sun, "combined with Dr. Marshall's testimony comparing and correlating the relationship between Target OEM prices and plaintiff prices (including Sun), creates a plausible inference that defendants' conduct directly targeted Sun in addition to conspiring against the Target OEMs, and was a material cause of higher DRAM prices paid by Sun."  March 31 Order at 45.

- The guilty pleas are properly in evidence, and the experts are entitled to base their opinions on the facts established therein.  *Id.* at 55.

- [P]roperly read, Dr. Marshall's testimony *does* undertake an explanation for whether and how defendants' price-fixing conspiracy with respect to the Target OEMs could have artificially raised prices on an industry-wide basis.  *Id*. at 55-56 (emphasis in original).

- For when taken in conjunction with the totality of all the other evidence submitted by plaintiff, Dr. Marshall's causation theory is supported by more than just the correlation analysis.  *Id.* at 56.

25      6.    **Average Prices**:  Finally, Hynix raises yet another "red herring" about Dr.
26 Marshall's asserted reliance on "*average* price lines."  Defs.' March 19 Mot. at 9.  First,
27 defendants misrepresent Dr. Marshall's analysis by labeling the prices he compared as "average

price lines." Dr. Marshall performed his initial correlation analysis on named OEM and Sun prices for *specific DRAM products* on a month-by-month basis. *E.g.*, Ex. 1, Marshall Reb. Rep. Fig. 49. In his initial Report, he had completed this analysis for eight such products. In response to criticisms that this was a small portion of all the common products, in his Rebuttal Report he reports the results of further analysis of 63 individual products which confirm that the OEM and Sun prices are highly correlated. Ex. 1, Marshall Reb. Rep. ¶¶ 80-85.

In addition, Hynix fails to show that even if its criticisms were accurate, the same analysis performed using individual prices rather than averages would make any material difference. Under the governing law, "'a defendant cannot rebut statistical evidence . . . without introducing evidence to support the contention that the missing factor can explain the disparities . . . .'" In other words, defendant must prove that the difference it asserts has a material impact on the results. *EEOC v. GTE of the Nw., Inc.*, 885 F.2d 575, 580 (9th Cir. 1989). Hynix has failed to do this here and the time for serving expert discovery in this case has long passed. March 31 Order at 69.

### III.  CONCLUSION

While the March Order technically arose under Rule 56, we note that the grounds asserted for disregarding Dr. Marshall's opinions on summary judgment were the same as the grounds asserted for his exclusion under *Daubert*. Further, under *Daubert,* "[t]he requirement of reliability is lower than the standard of correctness." *United States v. Williams,* 235 F. App'x. 925, 928 (3d Cir. 2007) (unpublished). Thus, it was perfectly rational, for example, for the District Court to deny a *Daubert* motion, but later reject the expert's opinion on summary judgment. *Rebel Oil Co., Inc. v. Atl. Richfield Co.,* 146 F.3d 1088, 1097 (9th Cir. 1998). In effect, the March 31 Order at least implicitly determined that Dr. Marshall's opinions were both admissible in evidence and sufficiently persuasive to raise at least genuine issues of fact. The admissibility standard under *Daubert* is a lower threshold than the standard governing summary judgment. See II Areeda and Hovenkamp, ANTITRUST LAW ¶ 309a (3d ed. 2007). For all of these reasons, Sun respectfully asks the Court to deny this redundant motion.

1   DATED:  April 16, 2009					CROWELL & MORING LLP

2
							*/s/ David D. Cross*
3							_____

4							Jerome A. Murphy
							David D. Cross
5							Matthew J. McBurney
							1001 Pennsylvania Avenue, N.W.
6							Washington, D.C.  20004-2595
							Phone: 202-624-2578
7							Fax:    202-628-5116
							Daniel A. Sasse
8							Theresa Lopez
							3 Park Plaza, 20th Floor
9							Irvine, CA  92614-8505
							Phone: 949-263-8400
10							Fax:    949-263-8414

11							*Counsel for Plaintiff Sun Microsystems, Inc.*