Jerome A. Murphy *(pro hac vice)*
David D. Cross *(pro hac vice)*
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
Telephone:     202-624-2500
Facsimile:     202-628-5116
E-mail:        jmurphy@crowell.com
               dcross@crowell.com

Daniel A. Sasse (CA Bar No. 236234)
Theresa C. Lopez (CA Bar No. 205338)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Telephone:     949-263-8400
Facsimile:     949-263-8414
E-mail:        dsasse@crowell.com
               tlopez@crowell.com

*Counsel for Plaintiff Sun Microsystems, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| *Sun Microsystems, Inc., et al. v. Hynix Semiconductor, Inc., et al.* | Case No.: C-06-01665 PJH<br><br>**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF THE HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702** |

**ARGUMENT IN REPLY**

Sun's opening motion explained that the opinions of Hynix's economists, Doctors Kevin Murphy and Robert Topel, should be excluded because they rest on arbitrary and unsupported assumptions, and therefore are unreliable.  Hynix responds with hundreds of pages of argument and supporting exhibits, seeking – through sheer quantity of paper, if nothing else – to cure the flaws that Sun has identified in those economists' opinions.  Hynix goes so far as to proffer freshly-minted declarations from Doctors Murphy and Topel containing brand new opinions and analyses, which were not included in those experts' reports and as to which Sun has had no opportunity for discovery.  Their belated declarations come almost a year after the close of expert discovery in this case (a deadline well known to Hynix), and therefore should be stricken as untimely.  Those late declarations aside, the vigor of Hynix's advocacy cannot patch the holes in its experts' reasoning and methodologies, which remain just as flawed now as when Sun filed its motion to exclude their testimony.

    **A.**    **Dr. Murphy's And Dr. Topel's Conclusions Rely On Unsupported And Untested Assumptions And Should Be Excluded.**

In its opening Motion, Sun explained three different ways in which Murphy's and Topel's opinions relied upon unsupported and untested assumptions, and therefore should be excluded as unreliable.[1]  Its bluster aside, Hynix' Opposition really has surprisingly little to say about the flaws that Sun has identified in its economists' opinions.

---

[1] Sun's opening Motion cited cases striking testimony by expert economists because their opinions (like those of Doctors Murphy and Topel) rested on unsupported assumptions. Plaintiff's Mot. to Exclude the Testimony of Expert Witnesses Kevin Murphy and Robert Topel Pursuant to Fed. R. Evid. 702 ("Motion") at 3 (Docket No. 533).  Hynix tries to distinguish those cases on the grounds that they arose in the context of summary judgment (rather than motions under Rule 702), and are somehow unlike the opinions of Hynix's economists.  Hynix's Opp. To Plaintiff's Mot. to Exclude the Testimony of Expert Witnesses Kevin Murphy and Robert Topel Pursuant to Fed. R. Evid. 702 ("Hynix Opp.")  at 7:16 – 20 & n.4 (Docket No. 649).  Neither distinction holds water.  In the cases cited by Sun, the courts struck the testimony from consideration by the finder of fact – precisely the relief Sun seeks here.  Second, those courts struck the opinions because

**1.    Dr. Murphy's Assumptions Regarding But-For Supply In His "Demand Only" Analysis Necessarily And Unavoidably Generate His Desired Conclusion And Therefore Do Not Constitute A Scientific Test Of The Existence Of A Conspiracy**

Sun's opening Motion explained that Dr. Murphy's assumptions regarding but-for supply in his "demand only" analysis were completely arbitrary choices that, when inputted into his economic models, yielded the "no overcharge" result that Hynix sought.  Specifically, Dr. Murphy would like to opine that the DRAM cartel did not restrict supply and so did not affect DRAM prices.  Sun Ex. 1, March 7, 2008 Expert Report of Kevin M. Murphy, Ph.D. ("Murphy Rep.") ¶ 96 & Ex. 16 (referring to his "demand only" analysis).  He reaches that conclusion (no DRAM supply restriction) only after assuming that there was no supply restriction in the first place.  *Id.*  Said another way, Dr. Murphy's demand only analysis simply assumed, from the outset, the very conclusion it purports to reach.

Hynix's primary response is to suggest that this portion of Dr. Murphy's analysis is simply an "exercise," and is not the "sole basis" for his conclusions regarding the restriction of DRAM supply.  Hynix Opp. at 8:1, 9:5.  But in his report, Dr. Murphy expressly relies upon this demand only analysis to contend that "relatively simple models of supply and demand have the ability to explain much of the movement in prices and quantities over the alleged conspiracy period."  Murphy Rep. ¶ 99; *see also* Sun Ex. 3, May 2, 2008 Rebuttal Expert Report of Michael D. Whinston, Ph.D. ("Whinston Rep.") ¶¶ 48 – 50.  Dr. Murphy undertook this demand-only analysis using unsupported assumptions regarding supply behavior, opted to include this analysis in his report, and apparently intends to offer his opinions on it at trial.  Thus, his demand-only analysis must surmount *Daubert* to be admissible.

they relied on unsupported assumptions – just like the opinions of Doctors Murphy and Topel. Finally, opinions are assessed by their reliability, not their length (as Hynix suggests).  The length of a report is not enough to survive *Daubert*, if the opinions in the report are not supported.

2

PL.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN M. MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702
CASE NO. C06-01665

Doc# 2739552\2

Hynix's laconic rejoinder to this straightforward proposition – essentially, "don't worry, Murphy's demand-only analysis is not the sole basis for his opinion" – really says nothing about the *reliability* of the analysis. On that crucial point, Hynix has very little to say, except that Dr. Murphy's assumptions were "not arbitrary and outcome driven." Hynix Opp. at 10:18-19. But as Dr. Whinston made clear in his expert report, Dr. Murphy had a panoply of choices for the supply component of his demand-only analysis. Whinston Rep. ¶¶ 51 – 55. From that range of choices, Dr. Murphy selected the one assumption regarding supply behavior that, when applied, yielded the "no overcharge" conclusion. And Dr. Murphy offers no plausible explanation for why he selected that one assumption over the range of better alternatives available to him. *Id.* It appears that his assumptions regarding but-for supply in his demand only analysis unavoidably generated his desired conclusions. That is not a scientific test regarding the existence of conspiracy.

Finally, Hynix relies heavily on Dr. Murphy's new, 26-page declaration when arguing the merits of his demand-only analysis. Hynix Opp. at 11:11 – 12:11 & n.10, and Hynix Ex. 5, Declaration of Kevin Murphy, dated April 16, 2009 ("Murphy Declaration"). The contents of this declaration should have been included in Dr. Murphy's report when it was submitted over a year ago (in March 2008), so as to afford Sun an opportunity to depose him on it, and to rebut these new opinions and analyses through Dr. Whinston's rebuttal report. The filing of this supplemental declaration, a year late, violates the deadline for completing expert discovery in this case, and is prejudicial to Sun, and therefore should be stricken.[2]

---

[2] Hynix objects to the demonstrative chart on page 5 of Sun's Motion. Hynix Opp. at 10 n.8 & Docket No. 649-27 (Apr. 20, 2009). Hynix's objections are not well-founded: The demonstrative chart is simply a graphical representation of Sun's argument regarding Murphy's demand only analysis, and is based on the evidence already in the record of the case, including Dr. Whinston's expert report. However, Hynix's various objections to the chart – particularly those based on timeliness – are exactly why the Court should strike the belated declarations from Doctors Murphy and Topel. Unlike Sun's demonstrative chart, the declarations contain entirely *new* analyses and opinions, and come a year after the expert discovery deadlines set by the Court.

Doc# 2739552\2

### 2.    Doctors Murphy's And Topel's Use of a Linear Time Trend in Their Econometric Analyses Is Results-Oriented, Unjustified, And "An Explicit Recognition Of Ignorance."

Doctors Murphy and Topel also improperly used a linear time trend to "fill in the gaps" of the supply curves in their pricing models. As Sun noted in its opening Motion, a properly-structured pricing model will not need to use such an intellectual shortcut to yield results. The Hynix economists' use of a time trend also just happens to yield their desired conclusion – that Sun suffered no damages from the conspiracy. However, as Dr. Whinston points out, removal of the linear time trend from the analyses performed by Doctors Murphy and Topel yields an average overcharge of 23.2% in the conspiracy period. Whinston Rep. ¶ 65 n.32.

Hynix responds first with the unremarkable propositions that "[t]ime trends appear in many economic models," Hynix Opp. at 12:13, and that Sun's experts and other "distinguished economists have used time trends in similar models and analyses as well." *Id.* at 13:1 – 4. That says nothing about the propriety of Murphy's and Topel's use of a linear time trend in *their* analysis, as a key assumption in a pricing model that yields dramatically favorable results for Hynix. In other words, the fact that other economists use a time trend for particular reasons does not explain why Doctors Murphy and Topel used an unsupported time trend in their analysis.

The key point is that the results reported by Doctors Murphy and Topel depend substantially upon their use of a linear time trend in their pricing model – and the removal of that component from their model immediately yields a substantial overcharge in prices charged to Sun. Sun Ex. 3, Whinston Rep. ¶ 65 n.32. In addition, we know from Doctor Murphy's prior writings that the use of a time trend can be an "explicit recognition of ignorance." *Id.* ¶ 64 (citing Lynne Schneider, Benjamin Klein, Kevin M. Murphy (1981): "Governmental Regulation of

4

Doc# 2739552\2

Cigarette Health Information," Journal of Law and Economics 24:575 – 612, page 583).[3]  Given all that, one would have expected Doctors Murphy and Topel to comprehensively explain – in their reports or deposition – why they had to use this linear time trend, and only this time trend, in their pricing model.  Neither economist offered that explanation, *id.* ¶¶ 65 – 68, leading one to reasonably conclude that their use of a linear time trend was results-oriented.

Finally, Hynix suggests in passing that "[a]t most, Professor Whinston's and Sun's criticisms go to weight and not admissibility."  Hynix Opp. at 15:16-17.  Not so.  Rule 702 and *Daubert* lay down certain non-negotiable benchmarks that specialized expert testimony must surmount in order to be presented to the fact finder.  In this case, the Hynix economists arbitrarily used a linear time trend for their pricing model, which then yielded favorable results for Hynix.  Removal of that precise variable from their model yields diametrically different results – namely, a substantial overcharge in DRAM prices charged to Sun.  Finally, the economists did not justify their choice of a time trend, or perform any independent analyses to determine whether the linear time trend corresponded with the data on DRAM prices and supply outside the conspiracy period.  Whinston Rep. ¶¶ 68, 81.  Such untested, arbitrary and results-oriented assumptions fall well short of the requirements of Rule 702 and *Daubert*.

> **3.**  **Doctors Murphy's And Topel's Assumptions Regarding The Shape And Slope Of The Demand Curve For DRAM During The Conspiracy Period Are Unjustified And Their Results Hinge Entirely Upon Them.**

Doctors Murphy and Topel also made certain assumptions regarding the shape and slope of the demand curve for DRAM during the conspiracy period.  Specifically, they assumed that the

---

[3] Hynix tries to downplay Doctor Murphy's prior observations about the use of linear time trends by noting that he wrote the salient article early in his academic career.  Hynix Opp. at 14:11 – 13.  But the article says what it says, and Dr. Murphy does not disavow it.

5

Doc# 2739552\2

demand curves for the period would be straight lines with a slope of -2. Murphy Rep. ¶¶ 85 and 91; Sun Ex. 2, March 7, 2008 Expert Report of Robert Topel, Ph.D ("Topel Rep.") ¶ 42; Whinston Rep. ¶ 39. Put simply, neither economist has any basis for these assumptions, which are critical to their econometric analyses. Both of them pointed to an ITC report on the DRAM industry as the sole basis for their assumptions. Murphy Rep. ¶ 90; Topel Rep. ¶ 40; Whinston Rep. ¶ 45. However, as Sun explained in its opening Motion, that ITC report says nothing about the shape of the demand curve, nor does it really provide support for the -2 slope that Murphy and Topel assumed for that demand curve.

In addition, neither economist performed any independent analyses to justify their assumptions about the demand curve. Whinston Rep. ¶¶ 45 – 46. In the absence of any real support for their assumed demand curves, their opinions based on them should be disregarded as unreliable, as Sun explained in its opening Motion.

Hynix has little substantive rejoinder to these points. It notes (as it did in response to other points raised by Sun) that "use of a constant elasticity of demand is standard economic modeling practice that is very common." Hynix Opp. at 19:6-8. Again, Hynix misunderstands the inquiry: The point is not whether, in the abstract, a particular economic assumption potentially may be justifiable. The issue is whether, in their reports and depositions, Doctors Murphy and Topel offered defensible justifications for these particular assumptions regarding the shape and slope of their preferred demand curve. They did not – and so the opinions flowing from those unsupported assumptions are not reliable.

Next, Hynix contends that their economists explained that their "demand specification is the midpoint of the range -0.3 to -0.7 (i.e., -0.5)." Hynix Opp. at 16:8-11. But their only stated support for that range is the ITC opinion that Sun discussed above and in its opening Motion –

6

PL.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN M. MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702 CASE NO. C06-01665

Doc# 2739552\2

which actually provides no real support for the range. It appears that Murphy and Topel simply relied upon the ITC's report range, without doing anything to corroborate its accuracy.[4]

Finally, Hynix defends its economists' reliance on the ITC's numerical range by saying they also "observed movements in the NASDAQ index and sales of digital signal processors." Hynix Opp. at 17:13-14. But the conclusion Hynix wishes to draw – that Murphy and Topel's assumptions are well-grounded – does not follow from its premise. As Dr. Whinston pointed out in his expert report, merely looking to the NASDAQ index and sales of digital signal processors says nothing about the correctness of their assumptions regarding the shape and slope of the demand curve. Whinston Rep. ¶¶ 45 – 46. And it certainly provides no defense against a *Daubert* challenge.

### B. The Testimony of Drs. Murphy and Topel Is Contradicted by the Undisputed Factual Record and Therefore Is Inadmissible Under Rule 702.

The testimony of Doctors Murphy and Topel also runs afoul of the undisputed factual record of this case and therefore is inadmissible under Rule 702. Hynix's economists would like to opine at trial that "atypically high prices" charged for DRAM during the conspiracy period are not the result of the DRAM conspiracy. Murphy Rep. ¶ 10; Topel Rep. ¶ 6. That testimony runs headlong into Hynix's guilty plea, in which Hynix admitted that it "and its coconspirators reached agreements on price increases and were able to institute price increases on DRAM sales to certain OEMs." Sun Ex. 6, Hynix Guilty Plea, at 4. Similarly, Hynix admitted that in periods of declining prices it reached agreements with its competitors "to limit the rate of price declines, which were achieved with varying levels of effectiveness." *Id.*

---

[4] Hynix contends that Sun's experts, Doctors White and Marshall, opined that the demand for DRAM "is between -0.3 to -0.7." Hynix Opp. at 16:12-13. Not so – Doctors White and Marshall simply opined that the demand for DRAM was inelastic.

7

Doc# 2739552\2

Hynix tries to argue around its guilty plea saying, in essence, that its admissions do not directly correlate to the trial testimony of Doctors Murphy and Topel.  According to Hynix, its guilty plea proves only "that certain prices to certain customers at certain times were affected in varying degrees."  Hynix Opp. at 20:19-20.  But, Hynix says, Doctors Murphy and Topel will "offer no opinion about transaction-by-transaction level pricing" of the type discussed in the guilty pleas.  Hynix Opp. at 20:21-22.  Instead, Hynix's economists will focus their testimony at trial "on whether a broader set of prices – market wide prices and all prices to all six OEMs listed as targets in the plea agreements – were impacted by the conspiracy delineated in the plea agreements."  *Id.* at 20:23-25.

Hynix's argument misses the mark.  This case is about the prices that *Sun* paid for its DRAM during the conspiracy period – not the more general concept of "market wide prices" that is the focal point of Doctors Murphy and Topel's reports.  Given that, what possible use is their testimony at a trial regarding the appropriate damages to be assessed for the anticompetitive conduct that yielded Sun's overcharges?

Moreover, Hynix's argument tries to saddle Sun with a burden – proof of the DRAM conspiracy's market-wide impact – that Sun does not have to meet in order to prevail.  Just last month, this Court – in rejecting Hynix's bid for summary judgment – noted that Sun "is not, in the first instance, necessarily required to prove the existence of defendants' efforts to fix benchmark prices as a legal element of their claim."  Order Denying Defendants' Motion for Summary Judgment and Motion to Exclude ("March 31, 2009 Order") at 53:18-23 (Docket No. 548).  Hynix's assertion also ignores that the prices that Hynix charged to the "Target OEMs" were, in fact, a benchmark from which Hynix derived the prices it charged to Sun.  *Id.* at 54:13-14 (noting Hynix admission that "Apple was a benchmark price for [pricing] information for

8

PL.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF
HYNIX DEFENDANTS' EXPERT WITNESSES KEVIN M. MURPHY AND ROBERT TOPEL PURSUANT TO FED. R. EVID. 702
CASE NO. C06-01665

Doc# 2739552\2

Sun").

In short, Doctors Murphy and Topel would like to offer opinions that disregard the undisputed factual record, and that also have nothing to do with the damages sustained by Sun.

## CONCLUSION

For the reasons set forth above and in Sun's opening memorandum, the Court should exclude the opinions of Doctors Murphy and Topel, because they depend upon assumptions regarding demand and supply curves that lack any proper basis, and are directly contradicted by the undisputed factual record of this case.

DATED:  April 23, 2009

CROWELL & MORING LLP

*/s/ David D. Cross*

Jerome A. Murphy
David D. Cross
Matthew J. McBurney
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
Phone: 202-624-2578
Fax:    202-628-5116

Daniel A. Sasse
Theresa Lopez
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Phone: 949-263-8400
Fax:    949-263-8414

*Counsel for Plaintiff Sun Microsystems, Inc.*

9

Doc# 2739552\2