KENNETH R. O'ROURKE (S.B.#120144)
korourke@omm.com
PAUL B. SALVATY (S.B. #171507)
psalvaty@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

MICHAEL F. TUBACH (S.B. #145955)
mtubach@omm.com
THOMAS P. BROWN (S.B. # 182916)
tbrown@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendants
HYNIX SEMICONDUCTOR INC. and
HYNIX SEMICONDUCTOR AMERICA INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SUN MICROSYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> HYNIX SEMICONDUCTOR, INC., ET AL., <br><br> Defendants. | Case No. C-06-01665 PJH <br><br> **DEFENDANTS HYNIX SEMICONDUCTOR INC. AND HYNIX SEMICONDUCTOR AMERICA INC.'S REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS ROBERT MARSHALL PURSUANT TO FED. R. EVID. 702 & 403** <br><br> Hearing Date: May 7, 2009 <br> Time: 2:30 p.m. <br> Place: Courtroom 3, 17th Floor <br> Judge: Hon. Phyllis J. Hamilton |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ....................................................................................................................... 2

    A.   Sun Fails to Show That Professor Marshall's Use of Average Prices Is Reliable ................................................................................................................... 2

    B.   Sun Misstates Hynix's Critique Regarding Output .................................................. 5

    C.   Sun Improperly Attempts to Avoid Its Burden and Mistakenly Asserts That Surviving Summary Judgment Precludes Exclusion Under Daubert and Rule 403 ..................................................................................................................... 6

        1.   Sun Cannot Shift Its Burden of Establishing Admissibility to Hynix ........ 6

        2.   Sun Incorrectly Asserts That Professor Marshall Is No Longer Subject to Exclusion Under Daubert or Rule 403 ....................................... 7

    D.   Sufficient Doubt as to the Reliability of Professor Marshall's Analysis Exists to Warrant, at the Least, Exclusion of Professor Marshall's Ultimate Causation Opinion ..................................................................................................... 8

III.   CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Cortes-Irizarry v. Corporacion Insular de Seguros*,
   111 F.3d 18 (1st Cir. 1997) ................................................................................................ 7

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) .............................................................................................. 5

*EEOC v. GTE of Nw., Inc.*,
   885 F.2d 575 (9th Cir. 1989) ........................................................................................... 6, 7

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ............................................................................................................ 5

*Lust v. Merrell Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ............................................................................................. 6, 7

*McReynolds v. Sodexho Marriott Servs., Inc.*,
   349 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................................ 7

*United States v. Williams*,
   235 Fed. Appx. 925 (3d Cir. 2007) ..................................................................................... 8

**OTHER AUTHORITIES**

Richard A. Posner, *Antitrust Law* (2d ed. 2001) ..................................................................... 2, 5

## I. INTRODUCTION

Plaintiff Sun Microsystems, Inc. ("Sun") fails to meet its burden to establish the admissibility of Professor Marshall's opinion and testimony at trial.[1] Sun dismisses the present motion as moot. It devotes less than a page to Hynix's[2] core criticism of Professor Marshall's methodology, namely, his use of average price lines and his concomitant assumption that the average price line of the Target OEMs[3] reflects the "varying levels" of impact to OEM prices admitted in the plea agreements. The pleas, of course, say nothing about any impact on the Target OEMs' average price line. Sun tries to side-step this shortcoming by claiming that Professor Marshall did not use average price lines, but his testimony is clear. He did.

Sun also erroneously argues that the subject of the present Motion was disposed of in this Court's Order Granting Motion to Dismiss; Denying Motion to Exclude; and Granting Summary Judgment in Part and Denying Summary Judgment in Part, dated March 31, 2009 ("Order"). Yet, the Court specifically stated, "defendants have not . . . attacked the admissibility of [Professor Marshall's] opinion" as part of their motion for summary judgment. Order at 53:16-17. Although the Court's Order necessarily discussed Professor Marshall's opinion in the context of Hynix and the other defendants' summary judgment arguments that Sun could not establish causation—through Professor Marshall's opinion or otherwise—Hynix had not at that time brought its challenge to the admissibility of Professor Marshall's opinion nor had it raised the unique challenges to Professor Marshall's methodology and its factual application to this case that Hynix raises by the present Motion.

---

[1] *See* Plaintiff Sun Microsystems, Inc.'s Opposition to Hynix Semiconductor Inc. and Hynix Semiconductor America Inc.'s Motion to Exclude or Limit the Testimony of Plaintiff's Expert Witness Robert Marshall Pursuant to Fed. R. Evid. 702 & 403 and Nanya Technology Corp. and Nanya Technology Corp. USA's Joiner Therein, dated April 16, 2009 ("Opposition" or "Opp.").

[2] "Hynix" herein refers to Defendants Hynix Semiconductor Inc. and Hynix Semiconductor America Inc.

[3] "Target OEMs" herein refers to the six Original Equipment Manufacturers—Apple, Dell, Gateway, HP, Compaq and IBM—to which certain DRAM suppliers admitted to conspiring to raise the contract prices of certain types of Dynamic Random Access Memory ("DRAM").

Sun has failed to carry its burden of establishing that Professor Marshall's methodology and opinions meet the *Daubert* and Rule 403 standards for admissibility. Professor Marshall should thus be precluded from testifying at trial.[4]

## II. ARGUMENT

### A. Sun Fails to Show That Professor Marshall's Use of Average Prices Is Reliable

Sun's Opposition simply avoids the critical issue raised by this Motion: whether the average price lines used by Professor Marshall as the basis for his correlation analysis (and his ultimate causation opinion) actually reflect, or are capable of reflecting, any impact to Target OEM prices from the conduct admitted in the pleas. The relevance of Professor Marshall's analysis hinges on whether this critical assumption is supportable, because it is only by inferring that the Target OEM average price line was impacted that Professor Marshall can conclude that a correlation between Target OEM and Sun prices indicates impact to Sun.

As Hynix explained in its opening brief, there is no way of knowing whether the Target OEM *average* price line was impacted by the DRAM suppliers' admitted conduct, because the plea agreements do not support this inference (given their reference only to "varying levels" of success and silence as to average or market-wide prices) and because Professor Marshall failed to conduct any analysis linking direct evidence of conspiratorial conduct to actual inflated prices paid by the Target OEMs (average or otherwise). And, in the absence of establishing a market-wide restriction of supply throughout the entire relevant period (which Professor Marshall does not purport to do), these average price lines cannot reflect impact given the fundamental economic principle that individual higher prices will be offset by lower prices at which a producer is forced to sell excess goods. *See* Ex. 1, Richard A. Posner, *Antitrust Law* 66 (2d ed. 2001) (absent an output restriction, "the goods will pile up and eventually exert irresistible pressure to reduce price").

---

[4] Defendants Nanya Technology Corporation ("NTC") and Nanya Technology Corporation USA ("NTC USA") have authorized Hynix to state that they join in this reply brief.

Because Sun bears the burden of establishing the admissibility of Professor Marshall's opinion and testimony, its silence is deafening. Rather than substantively responding to Hynix's critique, Sun instead claims that Hynix's critique is invalid because Professor Marshall did not actually use average price lines: "[D]efendants *misrepresent* Dr. Marshall's analysis by labeling the prices he compared as 'average price lines.'" Opp. at 5:27-6:1 (emphasis added). Sun's argument is disingenuous, at best. Dr. Marshall did use average price lines—as he himself testified.

The figures in Professor Marshall's report that purportedly show Sun's prices "moving together" with Target OEM prices clearly label the two lines as the "Named OEM average price" and the "Sun average price." December 14, 2007 Expert Report of Robert Marshall ("Marshall Report"), Ex. 2, Figures 20-22.[5] At deposition, Professor Marshall testified that he used average OEM prices as the basis for his correlation analyses (which, as mentioned above, are the basis for his causation opinion):

> Q: Now, Dr. Marshall, in these figures 21 through 28, these price indices are based on data that's aggregated across the defendants, are they not? [objection omitted]
>
> A: So these are – these are not price indices. These – these would be ***average prices*** paid by the – the named OEMs. So if what you mean is are they – are they ***averaged*** over named OEMs, the answer to that question is, yes, as the legends imply: ***named OEM average price***.

February 29, 2008 Deposition of Robert Marshall ("Marshall Dep."), Ex. 3 at 249:21-250:5 (emphasis added); *see also id*. at 295:19-24 ("[T]he data that I looked at for the correlations reported in . . . Table 3 and the – and the graphs in figure 21 through 28 are not by defendant. They – they are looking at this data set that I've talked about earlier that was constructed from the defendant-provided data.") Professor Marshall also used average prices in his rebuttal report. *See* May 2, 2008 Rebuttal Expert Report of Robert Marshall ("Marshall Rebuttal Report"), Ex. 4 at Figures 54-56.

---

[5] Unless otherwise noted, all references to Exhibits correspond to documents attached to the Declaration of Dixie L. Noonan filed concurrently herewith.

1  Sun also points to the guilty pleas (again), and to this Court's determination that "the
2  experts are entitled to base their opinions on the facts established therein," Order at 55:23-24, in
3  opposing this Motion.  *See* Opp. at 2-3.[6]  But Professor Marshall's assumption that the DRAM
4  suppliers' admitted conduct raised *average* prices paid by the Target OEMs throughout the
5  relevant period is not a "fact" established by the pleas.  This assumption, critical to Professor
6  Marshall's analysis and conclusions, is much broader than the simple proposition that the conduct
7  admitted in the pleas was "effective[] in raising DRAM prices."  Order at 44:27; *see also* Opp. at
8  4:15-16.  The pleas do not state how many purchase transactions were impacted.  As the Court
9  knows, the pleas that Hynix and other DRAM suppliers entered into with respect to the Target
10 OEMs (and not with respect to Sun) provide that *at certain times* during the relevant period,
11 certain DRAM suppliers conspired to raise the price of DRAM with "varying levels of
12 effectiveness."

13  Sun does not dispute this, and does not even try to counter Hynix's argument in this
14 regard.  Thus, Sun has failed to establish any nexus between the language of the pleas and
15 Professor Marshall's sweeping assumption that the *average* Target OEM price line was impacted
16 throughout the relevant period by the conduct admitted therein, nor has Sun even deigned to
17 respond in any meaningful way to Hynix's challenge to its *assumption* that average price lines
18 were affected and can properly serve as a basis for comparison.[7]

---

[6]  For purposes of this motion, Hynix does not dispute that Professor Marshall may rely on the statements contained in the plea agreements.  NTC and NTC USA have explained in their Joinder to this Motion that evidence of pleas by other parties is not admissible against NTC and NTC USA, and that the pleas may not be relied upon by Professor Marshall under Rule 703.  Sun did not address the NTC/NTC USA Joinder in its Opposition.  Moreover, Hynix explains herein why the facts "established" by the pleas are insufficient to support Professor Marshall's methodology, if it is assumed that Professor Marshall may rely upon the pleas under Rule 703 or otherwise.

[7]  Sun also appears to argue that even absent the statement in the pleas as to the "varying levels" of success that the DRAM suppliers enjoyed in raising prices to the Target OEMs, Professor Marshall's assumption that average prices were impacted is corroborated by Professor White's prediction equation indicating that the "but for" Target OEM prices were lower than the actual Target OEM prices (thus establishing, Sun argues, that the Target OEM prices were impacted).  *See* Opp. at 4:16-5:1.  First, Professor White's analysis simply does not address the question of whether *average* prices were impacted.  Second, Professor White's calculation of purported damages simply *assumes* that *all* difference between actual and "but for" prices is attributable to the impact of the conspiracy, and improperly fails to consider alternative explanations for the difference.  *See* Hynix's Motion *In Limine* No. 5 to Limit the Testimony of Plaintiff's Expert Witness Halbert White, dated March 31, 2009 (Docket No. 655).  In any event, Professor White's

1    This is precisely the type of opinion evidence the Supreme Court has cautioned courts to
2    exclude. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to
3    admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.
4    A court may conclude that there is simply too great an analytical gap between the data and the
5    opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Daubert v.*
6    *Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) ("Federal judges must
7    therefore exclude proffered scientific evidence under Rules 702 and 403 unless they are
8    convinced that it speaks clearly and directly to an issue in dispute in the case, *and that it will not*
9    *mislead the jury*.") (emphasis added).

### B.   Sun Misstates Hynix's Critique Regarding Output

Sun also mischaracterizes Hynix's arguments regarding the necessity for Professor Marshall to cite evidence establishing a sustained, industry-wide output restriction in order to justify his assumption that average Target OEM prices were impacted. *See* Opp. at 3. By the present Motion, Hynix does not intend to revisit the output arguments raised by the summary judgment motion. Sun misses the separate point being made, however, which is that Professor Marshall's assumption that the *average* Target OEM price line was impacted is unreliable because Professor Marshall fails to analyze whether there was an industry-wide supply restriction throughout the relevant period.

Sun does not deny the fundamental economic principle that, in the absence of a sustained, market-wide restriction on supply, higher prices to some *necessitates* lower prices to others because of the need to offload excess supply. *See, e.g.*, Marshall Dep., Ex. 3 at 201:16-21; *see also* Ex. 1, Richard A. Posner, *Antitrust Law* 66 (2d ed. 2001) (absent an output restriction, "the goods will pile up and eventually exert irresistible pressure to reduce price"). Yet Professor Marshall never purported to analyze the question whether such a market-wide and continuous multi-year supply restriction existed.[8]

---

analysis cannot serve as the basis for Professor Marshall's assumption that the average Target OEM price line reflects the impact of admitted conspiratorial conduct.

[8]   Sun attempts to avoid the issue by stating that "[t]he Court further noted that Dr. Marshall in fact points to evidence in the record indicating that 'defendants engaged in a variety of supply

It is Sun's burden to establish that Professor Marshall's methods and conclusions are reliable and based in fact. By failing even to analyze whether an effective, industry-wide supply restriction occurred, Sun cannot meet its burden to establish the reliability of Professor Marshall's use of Target OEM average prices as his basis for comparison, and in turn the admissibility of Professor Marshall's opinion testimony.

### C. Sun Improperly Attempts to Avoid Its Burden and Mistakenly Asserts That Surviving Summary Judgment Precludes Exclusion Under Daubert and Rule 403

#### 1. Sun Cannot Shift Its Burden of Establishing Admissibility to Hynix

Sun improperly seeks to shift the burden of establishing the admissibility of Professor Marshall's testimony to Hynix by incorrectly arguing that the "defendant must prove that the difference it asserts has a material impact on the results." Opp. at 6. Specifically, Sun argues that Hynix has the burden to show that analyzing individual prices, rather than average prices, would make a material difference before the Court can exclude Professor Marshall's testimony. This argument is flawed. It is well established that "the proponent of the expert bears the burden of proving admissibility" for the purposes of a *Daubert* motion. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).[9]

Sun's reliance on *EEOC v. GTE of Nw., Inc.*, 885 F.2d 575 (9th Cir. 1989), is misplaced. In *GTE*, a Title VII antidiscrimination case, the Ninth Circuit rejected the defendant's argument that the plaintiff did not establish a pattern or practice of intentional gender discrimination because the plaintiff's regression analysis failed to account for an additional non-discriminatory factor, namely, differences in job interest among men and women. The court held that the defendant could not "rebut an inference of discrimination by merely pointing to flaws in the

---

restrictions.'" Opp. at 3:13-14 (citing Order at 52). But the evidence cited by Professor Marshall does not speak to whether there is evidence of a *market-wide, nonstop, multi-year* supply restriction that could serve as a basis for assuming impact to average, aggregated Target OEM prices. Sun has never argued that such a prolonged, industry-wide supply restriction occurred, and the Court's summary judgment Order does not establish that evidence of such an output restriction exists in the record.

[9] It is also noteworthy that Professor Marshall testified that he "[doesn't] have any reason to believe that this would be any different if [he] looked at it by individual defendant" as opposed to grouping all DRAM suppliers together to generate the average Target OEM price line. Marshall Dep., Ex. 3 at 253:13-15.

1  plaintiff's statistics" but rather had to introduce evidence "to support the contention that the
2  missing factor can explain the disparities." *Id.* at 580-81.  In the first instance, *GTE* is
3  distinguishable because Hynix does not here allege that there is a "missing factor" in Professor
4  Marshall's statistical analysis.  Rather, it argues that Professor Marshall's analysis is
5  methodologically flawed and not based in fact.  Professor Marshall bases his opinion on
6  unsupportable assumptions, he improperly aggregated the DRAM suppliers' data, and he failed to
7  address the fact that Hynix's prices were much less correlated (.59), than the average (.98) for at
8  least one product.  *See* Motion at 12:19-13:9.  Professor Marshall's testimony is based upon
9  flawed methodology and unproven assumptions—not a regression analysis with a "missing
10 factor"—and Hynix need not introduce any additional evidence in support of this argument.

11   In addition, *GTE* arose out of, and relied upon, a line of Title VII discrimination cases
12 establishing that a defendant may not rebut an inference of discrimination by merely pointing to
13 missing factors in a plaintiff's regression analysis.  This burden-shifting rule promulgated by the
14 Ninth Circuit in the legal context of Title VII discrimination cases cannot be imported into an
15 analysis of the admissibility of expert testimony under *Daubert*.  Title VII cases employ a burden-
16 shifting framework that requires a defendant to rebut an inference of discrimination once a
17 plaintiff has established discrimination via statistical regression.  *See McReynolds v. Sodexho*
18 *Marriott Servs., Inc.*, 349 F. Supp. 2d 1, 7-8 (D.D.C. 2004).  *Daubert* motions, however, employ
19 no such burden-shifting framework, and the burden of proof is borne at all times by the party
20 seeking to introduce the expert testimony.  *See Lust*, 89 F.3d at 598.

21           **2.       Sun Incorrectly Asserts That Professor Marshall Is No Longer Subject
                        to Exclusion Under Daubert or Rule 403**
22

23   Contrary to Sun's argument, *see* Opp. at 6:16-27, this Court is not precluded from ruling
24 on the admissibility of Professor Marshall's testimony because it has entered an order denying
25 Hynix's motion for summary judgment.  *See Cortes-Irizarry v. Corporacion Insular de Seguros*,
26 111 F.3d 184, 188 (1st Cir. 1997).  A district court may rule on a motion for summary judgment,
27 and later address the issues that arise under a *Daubert* motion.  Indeed, "[b]ecause the summary
28 judgment process does not conform well to the discipline that *Daubert* imposes, the *Daubert*

1  regime should be employed only with great care and circumspection at the summary judgment
2  stage." *Id.* This Court explicitly did not rule on the question of the admissibility of Professor
3  Marshall's testimony when it noted that "defendants have not argued any manifest failure in
4  Dr. Marshall's methodology, or otherwise attacked the admissibility of his opinion." Order at
5  53:15-17.

6  Sun cites an unpublished Third Circuit case for the proposition that "the requirement of
7  reliability is lower than the standard of correctness." *United States v. Williams*, 235 Fed. Appx.
8  925, 928 (3d Cir. 2007); Opp. at 6. *Williams*, however, does not address the intersection between
9  *Daubert* motions and motions for summary judgment or the related distinction between questions
10 of admissibility of evidence versus of sufficiency of the evidence. And it certainly does not
11 establish that a denial of summary judgment precludes a subsequent and related *Daubert* motion
12 brought by the unsuccessful party at summary judgment. Rather, *Williams* stands for the
13 uncontroversial proposition that in order to be successful in a *Daubert* motion, the plaintiffs "do
14 not have to prove to the judge by a preponderance of the evidence that their expert's testimony is
15 correct, they must only show that it is reliable." [10] *Id.* Because this Motion directly attacks the
16 admissibility of Professor Marshall's opinion and testimony and raises different issues than those
17 adjudicated on summary judgment, this Motion is properly before the Court. Moreover, because
18 Professor Marshall's analysis and conclusions are *unreliable* (as discussed above and in Hynix's
19 opening brief), his testimony should be excluded at trial.

20 **D. Sufficient Doubt as to the Reliability of Professor Marshall's Analysis Exists to Warrant, at the Least, Exclusion of Professor Marshall's Ultimate Causation Opinion**
21

22 Given the serious flaws in Professor Marshall's analysis, he should not be permitted to
23 opine as to causation before the jury. Hynix respectfully acknowledges that the Court has stated
24 that "[t]his expert testimony warrants presentation to a jury . . . [f]or when taken in conjunction
25 with the totality of all the other evidence submitted by plaintiff, Dr. Marshall's causation theory is
26 supported by more than just the correlation analysis." Order at 56. The arguments that Hynix

---

28 [10] Notably, Hynix does not argue that Sun must prove that Professor Marshall's analysis is *correct*, but only that it is *reliable*—exactly the standard articulated in *Williams*.

makes by the present Motion were not before the Court when it issued its summary judgment Order, however. And the arguments made by this Motion establish—independently—that Professor Marshall's opinion that Hynix caused injury to Sun is based on methods and assumptions too far removed from fact to warrant presentation to the jury. Because Professor Marshall's causation opinion is premised on a fundamental assumption that, when removed, renders his analysis irrelevant to establishing his ultimate conclusion, he should not be permitted to opine on causation at trial. Therefore, even if the Court allows Sun to present Professor Marshall's analyses at trial, allowing him to actually opine that Hynix caused injury to Sun would be highly misleading and prejudicial, with no redeeming probative value. Professor Marshall's causation opinion should be excluded.

### III. CONCLUSION

Defendants Hynix Semiconductor Inc. and Hynix Semiconductor America Inc. respectfully request that the Court exclude any and all testimony, references to testimony or argument based upon the testimony of Professor Marshall in the above-entitled action. To the extent the Court denies this request, Defendants respectfully request that the Court limit Professor Marshall's testimony to his statistical analyses and preclude him from offering any opinion as to causation.

Dated: April 23, 2009

Respectfully submitted,

O'MELVENY & MYERS LLP

By: */s/ Kenneth R. O'Rourke*
    Kenneth R. O'Rourke
Attorneys for Defendants
HYNIX SEMICONDUCTOR INC. and
HYNIX SEMICONDUCTOR AMERICA INC.

SF1:763242.5